Lawrence N. AVERY and D. L. Stoy, Creditors, Appellants,

v.

Charles R. FISCHER, Trustee in Bankruptcy for Equitable Enterprises, Inc., Debtor, Appellee.

No. 22595.

United States Court of Appeals Fifth Circuit.

May 11, 1966.

Rehearing Denied June 8, 1966.

Robert L. King, Tampa, Fla., for appellants.

J. R. Trinkle, Jr., Tampa, Fla., Allen, Dell, Frank & Trinkle, Tampa, Fla., of counsel, for appellee.

Before PHILLIPS,* JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The question here is whether the previous timely filing of a creditor's claim in a Chapter XI proceeding for an arrangement constitutes a filing within the time prescribed in the Judge's subsequent order under § 196, 11 U.S.C.A. § 596, upon the proceeding being transmuted into one under Chapter X for corporate reorganization. The District Court held in the negative. Rejecting the claims of appellants as not timely filed and allowed, the result was that the approval of the plan by this particular class of creditors exceeded the statutory two-thirds. The plan was approved. We agree and affirm.[1]

■ As the whole problem is one of timeliness, dates, although the subject of no dispute, do count. On July 31, 1961, Equitable,[2] as debtor, filed a voluntary petition for an arrangement under Chapter XI.[3] By proper notice, §§ 334–336, 11 U.S.C.A. §§ 734–736, the meeting was fixed for August 18, 1961, for creditors to "attend, prove their claims, nominate a trustee, * * *, present written acceptances of the proposed arrangement, and transact * * * other business." Simultaneously, application to confirm the arrangement was to be filed by and heard on August 23, 1961. Although Chapter XI contemplates a "plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his *unsecured debts*," §§ 306(1), 307, 11 U.S.C.A. §§ 706(1), 707, appellants Avery and Stoy each filed on August 18 a formal verified proof of claim stating the debt was "* * * evidenced by a (note) * * * attached and made a part" thereof which, with other attachments, revealed that the debt on its face was secured, certainly in substantial part.[4]

---

* Senior Judge, Tenth Circuit, sitting by designation.

1. See note 22, infra, as to remand.

2. Equitable Enterprises, Inc. We refer to it in this way since it is at one time or another a debtor under Chap. XI, § 301 et seq., 11 U.S.C.A. § 701 et seq., a bankrupt under §§ 1–72, 11 U.S.C.A. §§ 1–112, and a corporation under Chap. X, § 101 et seq., 11 U.S.C.A. § 501 et seq.

3. It was given the docket style: "In Proceedings for an Arrangement No. 4047–T." That number remains throughout.

4. Attached to each claim were several printed contracts described as "Collateral Agreement." Executed by Equitable it was a promise to pay the indicated principal sum ($5,000). It further recited that "The payee hereby acknowledges receipt of the [described] * * * mortgage, together with the original note thereto and an assignment of mortgage * * *, as collateral security for the payment of this note." Also attached was a "Warehousing Agreement," signed by Equitable and each lender-payee (here the creditor). Referring to the loan to Equitable under the "Collateral Agreement," it promised that the mortgages to be assigned would equal 200% of the loan to Equitable. Equitable, with a right of substitution of other mortgages, was to serv-

Subsequently, on the hearing February 19, 1962, the Referee found that while a majority in amount and number of creditors voted for the proposed Chapter XI plan of arrangement, the debtor had failed to file an application to confirm and had now announced that it could not do so since "it did not have sufficient money to so do." Cf. § 337(2), (3), 11 U.S.C.A. § 737(2), (3). Consequently, the Referee concluded it was in the best interest of the creditors that the matter proceed "pursuant to the provisions of the Bankruptcy Act." See § 376(2), 11 U.S.C.A. § 776(2). On February 23, 1962, Equitable was adjudged a bankrupt. The first creditors' meeting was held March 12, 1962.

On July 6, 1962, an order was entered authorizing Equitable to proceed as a petitioning corporation under Chapter X. And here of crucial importance there was also entered the July 6 "Order Fixing Time and Manner Approving Claims and Interest".[5] The order required that by September 15, 1962, claims be filed with the Referee, with a copy sent to the Trustee at the Trustee's office. Also pursuant to the order, notice was given [6] to all creditors and interest holders.

Notwithstanding the order and notice, these appellants did nothing. It rounds out the picture to state that on October 21, 1964, a Special Master in the Chapter X proceedings reported that the Third Amended Plan of Reorganization was accepted by the required number of class 7[7] creditors. Not counted were the

---

ice the mortgages assigned as collateral and until such time as Equitable defaulted on repayment of the loan, it had the right to collect and use payments made by the mortgagors.

5. The order recited that it was made on motion of Charles R. Fischer, as Trustee. It stated:

"2. All proofs of claim shall be filed with JOHN W. B. SHAW, Referee in Bankruptcy, Room 433, Federal Building, Tampa, Florida, and a copy shall be mailed to CHARLES R. FISCHER, Trustee, at his address, 1251 A Park Street, Clearwater, Florida.

"3. All proofs of claim of whatever character, whether on contract or tort, secured or unsecured, liquidated or unliquidated, fixed or contingent, shall be filed with the Referee and Trustee, as aforesaid on or before the 15th day of September, 1962. All such claims not so filed will be barred and (a) may not be voted for or against any plan of reorganization and (b) may not participate in any plan of reorganization unless such claims are listed by the trustee as fixed claims, liquidated in amount and not disputed."

As to this and the notice provision, it was for all practical purposes the same as the usual, but otherwise more complex, form. See Form No. 2202, 7 Collier, Bankruptcy 501 (1940).

6. The notice stated:

"NOTICE IS HEREBY GIVEN that pursuant to an order of said court, dated July 6, 1962, that the 15th day of September, 1962, has been prescribed by the United States District Judge as the time within which proofs of claims or creditors, stockholders and other parties in interest may be filed.

"Proofs of claims and interests may be filed within such time with JOHN W. B. SHAW, Referee in Bankruptcy, Room 433, Federal Building, Tampa, Florida with a copy to CHARLES R. FISCHER, Trustee, 1251 A Park Street, Clearwater, Florida.

"Proofs of claim shall be in the form prescribed by subsections (a) and (b) of Section 57 of the National Bankruptcy Act.

"Dated July 24, 1962.

. . . . . . . . . . . . . . . . . . . . . .
CHARLES R. FISCHER,
Trustee for Equitable
Enterprises, Inc."

7. As required, § 197, 11 U.S.C.A. § 597, the Plan classed creditors and interest holders (1) through (6), inclusive, as priority tax, wage, and government claims to be paid in full and classes:

"(7) Holders of mortgages as collateral security for loans made to the debtor.

"(8) Holders of general claims as follows:

"(a) General claims arising from the excess of Class 7 claims over the appraised value of the security upon which such Class 7 claims are lien.

"(b) General Claims other than such claims described in subparagraph (a) of this paragraph 8.

"(9) Holders of old common stock."

These secured Class 7 claims (apparently as filed and allowed) aggregated $71,699.35. The Plan acceptances totaled $53,294.78.

claims of these appellants. On review the District Court overruled appellants' objections and entered the order confirming the Plan of Reorganization.

Of course the statute is as plain as it could be. It directs that "the judge shall prescribe the manner in which and fix a time within which the proofs of claim of creditors * * * may be filed and allowed." § 196, 11 U.S.C.A. § 596.[8]

To overcome this positive language and the uncontradicted fact that between the date of the order (July 6, 1962) and the cutoff date (September 15, 1962) no proof of claim was filed with the Referee, the Trustee or both, the appellants assert that § 196 authorized the Judge to prescribe the *termination* date of the September 15, 1962, but not the *commencement* date. For this theory they rely on West Hills Memorial Park v. Doneca, 9 Cir., 1942, 131 F.2d 374, and In re Keller, N.D.Cal., 1954, 120 F.Supp. 275, construing the phrases "within six months" and "within thirty days" of § 57 (n), 11 U.S.C.A. § 93(n).[9] In *West Hills* the Court states that "[w]hile the statute specifies the outer limit of time within which a claim must be filed * * *, it does not specify the earliest time when a claim can be filed," and consequently, "a claim may be filed whenever the proceedings are pending but within the statutory limitation above indicated." 131 F.2d at 377. In *Keller* the District Court

phrased it this way: "The term 'within' as defined in numerous cases set forth in 45 Words and Phrases, Cumulative Pocket Part, means 'not longer in time than' or 'not later than.' 'Within' does not fix the first point of time, but the limit beyond which action may not be taken." 120 F.Supp. at 275. Thus, the Court allowed a claim, filed more than six months after the first creditors' meeting and *prior* to the order avoiding the claimant's lien, as being "filed within thirty days from the date of such * * * avoidance."

■■ Reflecting as they do the general policy of the law to find a way in which to prevent the loss of valuable rights, not because something was done too late but rather because it was done too soon,[10] these cases, even if approved, do not, upon a consideration of all factors, justify the failure to file and prove the Chapter X claims here. As one might expect in an area as complex as bankruptcy the signs do point both ways and in the end the conceptual structure is not altogether symmetrical. But on balance § 196 reflects the intrinsic need for the formal filing (and proof) of claims after the commencement of the Chapter X proceeding quite without regard to what may have been filed previously. Consequently, § 196 should be constructed to achieve that end.

8. "After the approval of the petition the judge shall prescribe the manner in which and fix a time within which the proofs of claim of creditors and of the interest of stockholders may be filed and allowed. Objections by any party in interest to the allowance of any such claims or interests shall be heard and summarily determined by the court." § 196, 11 U.S. C.A. § 596.

9. § 57(n), 11 U.S.C.A. § 93(n) (emphasis added) :
"* * * Claims which are not filed *within six months* after the first date set for the first meeting of creditors shall not be allowed: * * * [*a*]*nd provided further*, That a claim arising in favor of a person by reason of the recovery by the trustee from such person of money or property, or the avoidance by the trustee of a lien held by such person, may be filed

*within thirty days* from the date of such recovery or avoidance * * *."

10. As to premature filing of notice of appeal, cf. Foman v. Davis, 1962, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222; Turner v. HMH Publishing Co., 5 Cir., 1964, 328 F.2d 136 (per curiam) ; Bates v. Batte, 5 Cir., 1951, 187 F.2d 142 (per curiam) cert. denied, 342 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616; Bros Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1963, 320 F.2d 594, 600–601; Keohane v. Swarco, Inc., 6 Cir., 1963, 320 F.2d 429; United States v. Pan Am. World Airways, Inc., 5 Cir., 1962, 299 F.2d 74, cert. denied, 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499; 5 Moore, Federal Practice #52.11[3]; 3A Barron & Holtzoff, Federal Practice and Procedure § 1554, at 73 n. 53 (Wright ed. 1958 & 1965 Supplement).

At the outset, cases construing § 57 (n), 11 U.S.C.A. § 93(n), are of dubious value since § 102, 11 U.S.C.A. § 502, makes § 57(n) expressly inapplicable to Chapter X proceedings.[11] But many more significant reasons sustain our views. They come readily to mind if we put it in the form of a question: Why is it important that claims be formally filed in the Chapter X proceedings as such?

■ There is, to begin with, the marked difference in the nature and character of claims encompassed within a Chapter X reorganization. Unlike ordinary bankruptcy in which claims are confined to those specified in § 63, 11 U.S.C.A. § 103, a reorganization covers creditors claims of every conceivable kind. § 106(1), 11 U.S.C.A. § 506(1).[12] See 6 Collier #2.-05, at 369, #2.08, at 384 #2.10, at 385, ##9.05, 9.06, at 2795–2804. Besides those of all kinds of creditors are the claims of stockholders. See, e. g., § 106 (12), 11 U.S.C.A. § 506(12); § 179, 11 U.S.C.A. § 579; § 216(6), (8), 11 U.S.C.A. § 616(6), (8); § 224(1), 11 U.S.C.A. § 624(1); 6 Collier #2.16, at 391.

■ There is thus the likelihood, if not certainty, that once the Chapter X reorganization proceeding commences the interest of many new parties, creditors or stockholders, will be at stake. Nowhere is the contrast more vivid than in our situation where the Chapter X reorganization grows out of an abortive Chapter XI arrangement which covers unsecured debts only (see statute quoted in text accompanying note 4, supra).[13]

■ More than that, the claims as filed and proved have a special significance in this statutory structure which envisages a reorganization and continuity of the economic enterprise. This objective is to be achieved through the adoption and confirmation of a plan of reorganization. But this cannot be accomplished unless there is precise knowledge about the nature and kind of claims of creditors and interest holders.

■■ Thus, the Trustee is required to prepare and file a list of the creditors of each class and a list of the debtor's stockholders of each class. § 164, 11 U.S.C.A. § 564.[14] The Trustee's duty is mandatory. The list, as filed and prepared, has extraordinary value since it is available for inspection and use by creditors, stockholders and interested parties in the organization of creditors committees or other concerted activity. See 6 Collier, #7.14, at 2017.

11. See 6 Collier, Bankruptcy #9.02, at 2773, and especially n. 21, #9.03 at 2779–80, n. 2 (14th ed. 1964) [hereafter referred to as Collier].

12. § 106(1):
"'[C]laims' shall include all claims of whatever character against a debtor or its property, except stock, whether or not such claims are provable under section 103 [§ 63] of this title and whether secured or unsecured, liquidated or unliquidated, fixed or contingent."

13. This is so despite the fact that Chapters XI and X are parallel structures for little and bigger enterprises and the approval of the petition, the acceptance and confirmation of a Chapter X plan of reorganization depends on an affirmative finding that Chapter XI is not adequate, § 130(7), 11 U.S.C.A. § 530(7); § 146(2), 11 U.S.C.A. § 546(2) § 147, 11 U.S.C.A. § 547; § 328 (Chapter XI), 11 U.S.C.A. § 728. See 6 Collier #4.02[3], at 1389, #4.14, at 1440, #4.14[8], at 1450, #6.08

[2], at 1776, #6.11, at 1796; 8 Collier #4.22, at 496; cf. SEC v. American Trailer Rentals, 1965, 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510; SEC v. Crumpton Builders, Inc., 5 Cir., 1964, 337 F.2d 907.

14. § 164, 11 U.S.C.A. § 564:
"Upon the approval of a petition * * * the court shall fix a time within which the trustee shall prepare and file in court a list of the creditors of each class, showing the amounts and character of their claims and securities and * * * the name and * * * the * * * address * * * of each creditor; and a list of the debtor's stockholders of each class * * *."
Its importance to the Court is soon demonstrated. "For the purposes of the plan [of reorganization] and its acceptance, the judge shall fix the division of creditors and stockholders into classes * * *." § 197, 11 U.S.C.A. § 597; 6 Collier #9.10, at 2823.

Armed as he is with traditional powers, § 187, 11 U.S.C.A. § 587, the Trustee has duties which transcend those of his counterpart in ordinary bankruptcy. Following traditional lines, he is, of course, required to examine all proofs of claim and interest and object to the allowance of those that may be improper. See 6 Collier, #9.04, at 2786. But one of the most significant things the Trustee must do is to prepare and file a plan of reorganization. § 169, 11 U.S.C.A. § 569; see 6 Collier, #7.25, at 2054. The statutory structure "makes the trustee the moving force in the formulation and preparation of reorganization plans," 6 Collier, #7.23, at 2046. He is actively to solicit from creditors and stockholders suggestions for the formulation of a plan or proposals in the form of plans. § 167 (6), 11 U.S.C.A. § 567(6). And after the plan is proposed, the hearing thereon held, § 171, 11 U.S.C.A. § 571, cleared by the SEC, § 172, 11 U.S.C.A. § 572, and approved by the Court, §§ 173, 174, 11 U.S.C.A. §§ 573, 574, it must be submitted by the Trustee with appropriate information, § 175, 11 U.S.C.A. § 575, to all affected creditors and stockholders for approval.

At this juncture the formal filing of claims becomes distinctively significant. For only creditors holding "claims filed and allowed" are permitted to vote. § 179, 11 U.S.C.A. § 579;[15] see 6 Collier #7.36, at 2099. "Acceptances, therefore, are to be computed only on the basis of proofs of claim * * * actually filed and allowed in the proceeding." 6 Collier #7.36, at 2099.[16] And this holds true to the end. Following this same approach, § 224(4), 11 U.S.C.A. § 624(4), restricts distribution under the confirmed plan to creditors (a) who have filed claims and made proof prior to the date fixed by the judge or (b) if not so filed, whose claims have been listed by the Trustee (see note 16, supra) "and are not contingent, unliquidated or disputed." See 6 Collier #11.14 [2], at 3913.

This whole structure reveals why it is so important that the Court, and the Trustee, as well, have specific knowledge not only as to those who might have, or might have had at one time, claims against the debtor, but more so as to those who are presently asserting them. The reorganization looks to the future. How many of the past creditors are willing to go along? What concessions need be made? What inducement is offered? These are all questions which the Trustee ought not to be required to speculate on. If the Trustee is to do his job properly, if a plan is to be hammered out, he and all others need to know, not what might have been claimed in the past, but what it is that is now asserted. This is the approach reflected by the Eighth Circuit in its now famed *Henwood* decision.

"Rights of creditors and stockholders may be altered by the plan, property that is encumbered may be sold free of liens, and distribution must be made to those having an interest in the proceeds. * * * The question that will confront the court in many respects will be a business question. Equitable adjustments and proper recognition of conflicting interests can be made only if the investments of stockholders and the amounts of claims of creditors are before the court. It is beside the question to contend that the court should consider the extent of the lien whether

---

15. § 179, 11 U.S.C.A. § 579 (emphasis added):
"After a plan has been accepted in writing * * * by or on behalf of creditors holding two-thirds in amount of the claims *filed* and *allowed* of each class * * * the judge shall fix a hearing * * * for the consideration of the confirmation of the plan * * *."

16. Restricting the right to vote—as distinguished from the right to participate in distributions under the plan—to those claims filed and allowed is highlighted by § 198, 11 U.S.C.A. § 598, which permits an indenture Trustee to file claims for all holders of securities but prescribes that "* * * in computing the majority necessary for the acceptance of the plan only the claims filed by the holders thereof, and allowed, shall be included." § 198, 11 U.S.C.A. § 598; see 6 Collier #9.16 [1], [2], at 2862–66.

the claim or claims are filed or not. If the creditor in fact has a right, he should not have substituted for it the mere possibility that it will be protected without his active participation in the proceedings."

Guaranty Trust Co. of New York v. Henwood, 8 Cir., 1936, 86 F.2d 347, 354, 108 A.L.R. 1020, cert. denied, 1937, 300 U.S. 661, 57 S.Ct. 492, 81 L.Ed. 870.

■ These, and many other factors demonstrate why acknowledged scholars in this field give an expanding, not niggardly, reading to the full scope of the judge's power, indeed his duty, to "prescribe the manner in which and fix a time within which" claims of creditors and interest holders are to be filed and allowed. Thus 6 Collier #9.02, at 2772, broadly states: "The section leaves this determination entirely to the discretion of the judge." This covers method, manner, and place of filing [17] as well as the time within which it is to be done. See 6 Collier #9.03, at 2779. Considerable flexibility remains, for the judge, except, perhaps, as to claims then legally extinguished, does have the power upon cause shown to extend the time. § 119, 11

U.S.C.A. § 519.[18] And where "there is placed on record in the proceeding within the time fixed anything sufficient to show the existence, nature and amount of a claim or interest," the Court may permit the filing of an amendment "even though the time has expired." 6 Collier #9.03, at 2783.

Of course, the force of this argument is dissipated in part if one were to assume, as appellants assert, that whatever is in the file as the proceeding goes through the metamorphoses from XI— to bankruptcy—to X is to be regarded as "filed" in the eventual proceeding. But only partly so. For this is to suggest a disorderly, not an orderly, procedure—one in which the rights of parties are exposed to substantial peril depending on what attitude a Judge or a Court, trial or appellate, might or will take toward some paper physically tied down by an acco fastener in a manila folder bearing the same docket number which must carry through to the Chapter X proceeding as well.[19]

■ This leaves only the tag end suggestion [20] which urges essentially that

17. The need for precise instructions as to the method or manner, not just time, of filing is illustrated by claims for holders of interest based on stock. This presents problems far different from ordinary creditors' claims. 6 Collier #9.02[2], at 2777. Thus, stock certificates may not need to be surrendered, trading on the market can continue, and proofs of claim might be based on lists prepared by stock transfer agents. See 6 Collier #9.02[2], 7.36.

Likewise, to facilitate and expedite administration, the order as done here (note 5, supra) prescribes the manner and time of filing objections, the automatic allowance of the claim if not objected to, etc. See 6 Collier #9.02, at 2774–75, #9.04, at 2785. And see the elaborate standing Bankruptcy Rules of the Southern District of New York. Rule X–17(b), quoted in 6 Collier #9.02, at 2773 n. 20. See also id. at 2772 n. 19, 2778 nn. 39 & 40.

18. § 119, 11 U.S.C.A. § 519:
"Whenever under this chapter the court is required or permitted to fix a time for

any purpose, the court may upon cause shown extend such time."

19. The fact that this case continues to bear the same style, title and number as it did in passing from Chapter XI—to bankruptcy—to Chapter X is irrelevant. (See note 3, supra) The reorganization proceeding could be filed only in that Court and proceeding. §§ 127, 128, 11 U.S.C.A. §§ 527, 528.
"The filing of a reorganization petition in a pending bankruptcy proceeding does not create any break in the proceedings; on the contrary, continuity is preserved, so that the date of the original bankruptcy petition is the date of cleavage for the determination of such questions as the avoidance of preferences, the validity of liens and the like." 6 Collier #4.10, at 1430; see id. #4.04, at 1395, #3.04[2], at 575.

20. The alternative contention that there was no objection by Trustee or any other person to the allowance of these claims, nor any order invalidating the claims automatically fails on our holding that no claim was timely filed. Hammer v. Tuffy, 2 Cir., 1944, 145 F.2d 447, and 2

this intricate structure we have attempted to delineate lacks symmetry. Thus, with some appeal, it is urged that the planned parallelism of Chapter XI and X (see note 13, supra) and the successor-nature of any Chapter X proceeding which follows an earlier bankruptcy proceeding (see note 19, supra) suggests that whatever is in the earlier "file" should be deemed automatically in the later one. More persuasive, perhaps, is the related fact that the *right* to file a claim in the manner, time and place specified in a successor Chapter X order may depend on whether as required by § 57(n), 11 U.S.C.A. § 93(n), a claim was filed within the six-months period.[21] Thus, it is urged, it is ironic that the prior filing of a claim may—and perhaps must—be looked to in order to determine whether the required new filing is permissible and yet that earlier filing is no substitute for the later one. Convincing as these arguments may be, they are not sufficient to overcome the factors demonstrating that there is a real, practical need for the formal filing of the claims in the reorganization proceedings in both the time and manner prescribed by the order.

The result is that the District Court's order rejecting these claims as not timely filed and disregarding them in determining approval of the plan, was correct.

Affirmed and Remanded.[22]

Remington, Bankruptcy, §§ 1012–13, urged by appellants, are not to the contrary.

21. See 6 Collier #9.03, at 2780 n. 2. This note points out that in a situation where the reorganization petition is filed in the pending bankruptcy proceeding *prior to* the expiration of the six-month period, the requirements of § 57(n), 11 U.S.C.A. § 93(n), are presumably superseded by those of § 196, 11 U.S.C.A. § 596. However, where the Chapter X petition is filed *after* the expiration of the six-month period as a successor to a bankruptcy proceeding, a more difficult problem is raised. Based on the analogy to treatment of compositions under former § 12, it is suggested that "claims not already properly filed within time [6 months] may

not be filed in the Chapter X proceeding." See also § 238(3), 11 U.S.C.A. § 638(3), following dismissal of Chapter X and re-institution of bankruptcy proceedings. 6 Collier #12.06[2], at 4267.

22. The right to vote is distinct from the right to participate in distributions. The Trustee was required under § 164, 11 U.S.C.A. § 564, see note 14, supra, to file a list of creditors of each class. From our sketchy record we cannot tell whether the Trustee's list included in whole or in part either one or both of the claims of the appellants as "not contingent, unliquidated or disputed," in which event there might be some right to participate in the distribution under the plan. § 224(4), 11 U.S.C.A. § 624(4).