BECTON, DICKINSON AND COMPANY *vs.*
STATE TAX COMMISSION.

Suffolk. October 5, 1977. — January 10, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Appellate Tax Board*, Appeal, Jurisdiction. *Taxation*, Corporate excise.

A corporation which had recomputed its tax liability in order to facilitate a deficiency assessment and which had received notice from the Commissioner of Corporations and Taxation that he intended to make the deficiency assessment was a "corporation aggrieved by the assessment of a tax" within the meaning of G. L. c. 63, § 51, and the fact that the corporation filed an application for an abatement of the deficiency assessment prior to the actual notice of assessment was not fatal to the jurisdiction of the Appellate Tax Board. [232-234]

The failure of a corporation to comply strictly with the requirements of G. L. c. 63, § 42, did not affect the jurisdiction of the Appellate Tax Board to rule on the corporation's application for an abatement. [234-236]

APPEAL from a decision of the Appellate Tax Board.

*Verne W. Vance, Jr. (Jerome Preston, Jr.,* with him) for the taxpayer.

*Anthony P. Sager,* Assistant Attorney General, for the State Tax Commission.

HENNESSEY, C.J. This is an appeal by Becton, Dickinson and Company (hereafter referred to as "Becton, Dickinson" or "the taxpayer") from a decision of the Appellate Tax Board (board) dismissing for lack of jurisdiction Becton, Dickinson's application for an abatement. The State Tax Commission (commission) previously had denied the abatement, and Becton, Dickinson had appealed that ruling to the board. The taxpayer seeks to abate a deficiency assessment regarding its liability for the foreign corporation excise tax for its fiscal year ending September 30, 1968. G. L. c. 63, § 39, as then last amended by St. 1967, c. 796, § 19. The board decided that it lacked jurisdiction by reason of the taxpayer's failure to apply seasonably for abatement. We hold that the board erroneously dismissed the appeal and, as will be seen *infra,* we reverse and remand to the board for a decision on the merits.

In essence, the present dispute is a disagreement over how to calculate the amount of Becton, Dickinson's net income earned from business carried on by it in Massachusetts through its Electrodyne Division. A statutory formula, contained in G. L. c. 63, § 38, and applied by the commission, shows that Becton, Dickinson earned approximately $500,000 in Massachusetts taxable income during fiscal year 1968. Becton, Dickinson alleges that the statutory formula is not reasonably adapted to approximate income derived from its Massachusetts operations and that it is therefore entitled, under G. L. c. 63, § 42, to depart from the statutory income-allocation method and to calculate its Massachusetts taxable income according to a different method. According to the "separate accounting" method that Becton, Dickinson proposes to use, the corporation had no income taxable by Massachusetts in 1968, because even though Becton, Dickinson as a whole earned a profit of

about $20,000,000, the Electrodyne Division incurred losses of more than $1,000,000. The taxpayer asserts that its Massachusetts tax liability is attributable solely to the activities of the Electrodyne Division and that Electrodyne enjoys such a degree of autonomy within the Becton, Dickinson corporate structure that Massachusetts should determine the whole tax liability of the corporation with reference only to the performance of the Electrodyne Division.

Prior to filing its 1968 tax return, Becton, Dickinson several times requested permission, pursuant to G. L. c. 63, § 42, to calculate its taxable income according to a nonstatutory method. Receiving no reply to its letters, Becton, Dickinson mailed its 1968 return on May 9, 1969, together with a covering letter indicating that the return had been prepared using the separate accounting method. After an exchange of letters on the subject, Becton, Dickinson was informed on December 1, 1971, that the commission would determine its 1968 tax liability in accordance with the following procedure: Becton, Dickinson would recompute the tax due using the statutory formula and would disclose certain information relevant to its conclusions; the Commissioner of Corporations and Taxation (Commissioner) would render a deficiency assessment requiring Becton, Dickinson to pay the tax computed according to the statutory formula; Becton, Dickinson would then raise its objections to the use of the statutory formula by applying for an abatement. On March 1, 1972, the Commissioner sent the taxpayer a notice of intent to assess a deficiency. Shortly thereafter, Becton, Dickinson supplied the requested information concerning recomputation of the tax and filed with it an application for an abatement of the anticipated deficiency assessment. The Commissioner made the assessment on May 12, 1972, and sent notice of the assessment to Becton, Dickinson shortly thereafter. The commission denied the abatement, as noted above, and the corporation appealed to the board.

1. Under G. L. c. 63, § 51, as amended through St. 1970, c. 601, § 6, which has since been replaced by a similar statute, only a "corporation aggrieved by the assessment of a

tax" could apply for an abatement, and only then if it acted within two years after the notice of assessment had been sent.[1] The board maintains that when Becton, Dickinson applied for the abatement, it was "aggrieved" only by the notice of intent to assess additional income, not by the assessment itself. The board held that it lacked jurisdiction to render a decision on the early application and that Becton, Dickinson's failure to file a second, identical application after receiving the notice of assessment entirely prevented the board from reaching the merits of the case.[2] We disagree.

Recent decisions of this court have emphasized that statutes embodying procedural requirements should be construed, when possible, to further the statutory scheme intended by the Legislature without creating snares for the unwary. Compare *Pierce* v. *Board of Appeals of Carver,* 369 Mass. 804 (1976), and *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74 (1975), with *Sears, Roebuck & Co.* v. *State Tax Comm'n,* 370 Mass. 127, 129-130 (1976). Moreover, this court in the past has given a broad, nontechnical construction to the term "corporation aggrieved by the assessment of a tax" as that phrase is used in G. L. c. 63, § 51. See *Aspinook Corp.* v. *Commissioner of Corps. & Taxation,* 326 Mass. 327, 333 (1950). Although our cases have consistently construed statutory deadlines against taxpayers who file late applications for tax abatements, see, e.g., *Currens* v. *Assessors of Boston,* 370 Mass.

---

[1] General Laws c. 63, § 51, as amended through St. 1970, c. 601, §§ 5, 6, and repealed by St. 1976, c. 415, § 102, provided, in pertinent part: "Any corporation aggrieved by the assessment of a tax under sections thirty to fifty, inclusive, may apply to the commission for an abatement thereof at any time within two years after the date upon which the notice of assessment is sent. . . . Any corporation aggrieved by the refusal of the commission to abate a tax . . . under this section may appeal in the manner provided by section seventy-one." Abatement procedure is now governed by G. L. c. 62C, §§ 37-39, inserted by St. 1976, c. 415, § 22.

[2] The present case does not fall under the second sentence of c. 63, § 51, which permitted the taxpayer, in certain circumstances, to rely on its tax return as an application for abatement.

249, 252 n.3 (1976); *New Bedford Gas & Edison Light Co.*
v. *Assessors of Dartmouth,* 368 Mass. 745, 747-748 (1975),
we cannot believe that the Legislature intended to penalize
the taxpayer for acting prematurely under the circum-
stances of this case.

Becton, Dickinson's early application did not interfere
either with administrative procedure before the commission
or with the statutory policy of encouraging informal resolu-
tion of tax disputes. General Laws c. 63, § 44, requires the
Commissioner, before issuing a deficiency assessment, to
notify the taxpayer of his intent to do so. In this case, when
the notice of intent was sent, both the taxpayer and the
Commissioner knew from previous correspondence that the
deficiency assessment was inevitable and that there was no
hope of informally resolving the disagreement as to the ap-
propriate accounting method. Construing the statute, we
hold that the term "corporation aggrieved by the assessment
of a tax" is broad enough to include a corporation which has
recomputed its tax liability in order to facilitate a deficiency
assessment and which has received notice of the Commis-
sioner's intent to make that assessment.

We also conclude that prematurity in filing the applica-
tion was not a matter fatal to jurisdiction. "It is well settled
in similar cases, where a statute required action within a
certain time 'after' an event, that the action may be taken
before that event. Such statutes have been construed as fix-
ing the latest, but not the earliest, time for the taking of the
action." *Tanzilli* v. *Casassa,* 324 Mass. 113, 115 (1949). Ac-
cord, *Webster Thomas Co.* v. *Commonwealth,* 336 Mass.
130, 135-136 (1957). Moreover, it is a general policy of the
law to prevent loss of valuable rights, not because some-
thing was done too late, but rather because it was done too
soon. See *Henderson* v. *Eastern Freight Ways, Inc.,* 460
F.2d 258, 260 (4th Cir. 1972); *Avery* v. *Fischer,* 360 F.2d
719, 723 (5th Cir. 1966).

2. The board alluded in its opinion to Becton, Dickinson's
failure to satisfy G. L. c. 63, § 42, and suggested that the
procedural defect might afford a second jurisdictional

ground for dismissing the taxpayer's appeal. The board did not rule on this point, but the question of law was raised below, and all such points which might support affirmance of the board's decision are properly before this court for decision. See G. L. c. 58A, § 13, as amended through St. 1976, c. 415, § 3. General Laws c. 63, § 42, as then last amended by St. 1966, c. 698, § 64, required the taxpayer to "apply to the commissioner, on or before the fifteenth day of the third month following the close of the taxable year, to have its income derived from business carried on within this commonwealth determined by a method other than that set forth in section thirty-eight." When Becton, Dickinson filed its 1968 return, it attached a cover letter indicating that it wished to have its 1968 taxable income determined by the separate accounting method. Such a letter probably would satisfy G. L. c. 63, § 42, as presently amended,[3] but because Becton, Dickinson had received two three-month extensions before filing its return, the letter did not constitute a timely application under the version of the statute in effect at the time.

The question is whether the technical defect in Becton, Dickinson's § 42 application in any way affects the jurisdiction of the board to rule on the application for an abatement. We conclude that it does not. The omission was trivial. It did not interfere with the dual purpose of the § 42 application, which is to place on the taxpayer the burden of asserting its eligibility for exceptional tax treatment and to put the Commissioner on notice of the taxpayer's position. The tax authorities knew even before the close of the 1968 fiscal year what tax treatment Becton, Dickinson sought, and there was never any delay or confusion in the administrative

---

[3] Under the statute as amended through St. 1969, c. 599, § 1, the taxpayer applies to use a nonstatutory accounting method simply "by attaching to its duly-filed return a statement of the reasons why the corporation believes that the allocation and apportionment provisions of this chapter are not reasonably adapted to approximate its net income derived from business carried on within this commonwealth and a description of the method of allocation sought by it." G. L. c. 63, § 42.

proceedings before the commission or the board attributable to the omission. Sloppiness in following a prescribed procedure is not to be condoned, cf. *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74, 79 (1975), but, unlike the application for an abatement, the § 42 application plays such an insignificant role in the process of tax administration that an oversight in its preparation should not prevent the board from reaching the merits of the case.

3. General Laws c. 63, § 42, is a legislative recognition that the § 38 formula sometimes is not reasonably adapted to determine the amount of Massachusetts taxable income earned by a foreign corporation. Once the corporation demonstrates that the statutory formula yields an inappropriate measure of its tax liability, § 42 leaves it to the tax authorities to decide what alternative measure is most appropriate for the particular taxpayer. The decision of the Appellate Tax Board is reversed and the case is remanded for a decision on the merits.

*So ordered.*