KONOVER MANAGEMENT CORPORATION & others[1] *vs.*
PLANNING BOARD OF AUBURN.

No. 91-P-601.

Suffolk. October 15, 1991. - March 27, 1992.

Present: KASS, JACOBS, & LAURENCE, JJ.

*Practice, Civil,* Zoning appeal. *Jurisdiction,* Zoning. *Zoning,* Appeal.
*Notice.*

Although formal notice of an action for judicial review of a town planning
board's decision denying a special permit was never physically filed in
the office of the town clerk pursuant to G. L. c. 40A, § 17, the actual
knowledge of the town clerk and assistant town clerk, imparted to them
within the statutory twenty-day period by an employee of the planning
board who had received and retained in his office a copy of the com-
plaint, was sufficient in the circumstances to satisfy the requirement of
notice. [322-327]

CIVIL ACTION commenced in the Land Court Department
on December 21, 1989.

The case was heard by *Robert V. Cauchon,* J.

*David A. Guberman* (*Brian C. Levey* with him) for the
plaintiffs.

*Edward P. Healy,* Town Counsel, for the defendant.

LAURENCE, J. The plaintiffs ("Konover") brought an ac-
tion in the Land Court, pursuant to G. L. c. 40A, § 17, seek-
ing review of the denial by the Auburn planning board
(board) of Konover's application for a special permit to de-
velop a shopping mall on land Konover owns in Auburn. The
trial judge dismissed the action on the ground that notice of
Konover's appeal was not properly given to the town clerk as

---

[1]Simon Konover and Auburn Commercial Associates Limited
Partnership were also named as plaintiffs in the complaint. The plaintiffs
were frequently referred to below collectively as "Konover," which we
shall do here.

required by § 17.[2] Konover contends that the uncontroverted facts demonstrated that he had adequately satisfied § 17's notice requirements. We agree and reverse.

Konover has been attempting to obtain permission to build a shopping mall for several years. Among the opponents of his proposal have been board member Ronald E. Prouty and his wife, assistant town clerk Elizabeth Prouty, who actively petitioned and spoke out against Konover's plan and urged its denial by the board. After some preliminary procedural skirmishing, the board did deny Konover's special permit application, in October, 1989, filing its decision in the town clerk's office on December 14, 1989. Under G. L. c. 40A, § 17, Konover had twenty days, until January 3, 1990, to commence an action appealing the board's decision and to provide notice of the action to the town clerk.

Konover filed his § 17 complaint in the Land Court on December 21, 1989, and also began the process of serving the summons and complaint upon the defendants. A special process server effected service on all the members of the board over the next two days, leaving the papers designated for the defendant Ronald Prouty at the Auburn residence of Ronald and Elizabeth Prouty. On December 22, 1989, the process server brought the papers to Auburn Town Hall, where he properly served the board at 11:00 A.M. by handing the board's copy of the summons and complaint, in a sealed envelope addressed "Summonses to the Auburn Planning Board in the Town of Auburn," to the secretary to the town planner, an employee of the board. The process server was unaware, however, that the sealed envelope also contained a set of the papers which Konover's counsel had originally la-

---

[2]General Laws c. 40A, § 17, as amended by St. 1982, c. 533, § 1, provides, in pertinent part:

"Any person aggrieved by a decision of . . . any special permit granting authority . . . may appeal to the land court . . . by bringing an action within twenty days after the decision has been filed in the office of the . . . town clerk. . . . Notice of the action with a copy of the complaint shall be given to such . . . town clerk so as to be received within such twenty days."

beled as being a set to be served on the town clerk.[3] The process server consequently did not leave a set of the papers at the town clerk's office or otherwise take any action constituting notice to the town clerk.

Upon receipt of the sealed envelope, the town planner's secretary placed it, unopened, on the desk of the town planner, who was away until December 26. The process server's delivery of the envelope to the secretary was observed from across the narrow corridor by assistant town clerk Elizabeth Prouty. At some point during the morning of December 22, the secretary informed Ms. Prouty and another assistant town clerk who was also present that she (the secretary) had received "a summons from Konover," possibly also referring to the envelope as the Konover "appeal papers."

On December 26, 1989, the town planner, Stephen Costello, opened the sealed envelope when he arrived at his desk first thing in the morning. He recognized the papers inside as representing Konover's appeal from the board's adverse decision.[4] Costello walked across the narrow corridor into the town clerk's office with the papers in his hand and told both assistant clerk Prouty and town clerk Doris Hill, who was in the office at the time, that he had received Konover's "complaint for judicial action" against the town. Without letting the papers out of his hand, he showed Prouty the front page of the complaint, "to see if she had received what I had received."[5] Prouty told Costello that "a copy of this was not filed at the town clerk's office."

---

[3] The town clerk's office in the Auburn town hall is directly across a narrow corridor from and its transaction counter faces the town planner's office, which is behind a similar counter.

[4] The record is silent whether the town planner or anyone else at the town hall ever saw the original label designating one of the sets of documents to be delivered to the town clerk. None of the municipal witnesses was questioned on this point.

[5] The judge's finding that Costello "did not show [Prouty] .. .·. the documents he held" is ambiguous. To the extent it meant that she did not examine or read the papers to see what was contained within the set, it was correct. To the extent it meant that Prouty did not look at the front page of the complaint and recognize it as a complaint, it would be clearly erroneous, because there is no evidence to support it, and the uncontradicted

Costello "thought it was odd that [the town clerk] had received nothing" when he had. He did not, however, offer the extra set of the documents he presumably had taken from the envelope[6] to the clerk's office but put everything he had taken from the envelope into the "Konover" file in the board's office. No formal notice nor the complaint with respect to Konover's § 17 action was ever physically filed in the clerk's office. There is no doubt, however, from the evidence and the judge's findings as to the interaction between the board employees and the clerk's office, that, as of December 26, 1989, both town clerk Hill and assistant town clerk Prouty were aware that Konover had commenced an action seeking review of the board's December 14, 1989, decision denying the special permit for the shopping mall. They both were also aware that the papers reflecting that action lay in a file a few feet from their office.

On December 29, 1989, the defendants filed a motion in the Land Court to enlarge their time to answer the complaint, which the judge granted. Also on December 29, 1989, Konover served a second set of the litigation papers on board member Ronald Prouty by certified mail addressed to him at his home; Ronald Prouty signed the receipt for the delivery. The parties proceeded to engage in extensive discovery and conducted a two-day trial in October, 1990. Six months later, on April 5, 1991, the judge, apparently without motion by the defendants, dismissed the case for Konover's failure to serve notice on the town clerk as required by § 17.[7] This appeal followed.

We recognize that receipt of notice by the town clerk is a jurisdictional requisite for an action under G. L. c. 40A, §

---

evidence refutes it. See *Conte* v. *School Comm. of Methuen*, 4 Mass. App. Ct. 600, 604 (1976).

[6]We may make our own findings of fact and inferences from basic facts, where supported by the record and the judge has made none, as to this aspect of the case. *Sanguinetti* v. *Nantucket Constr. Co.*, 5 Mass. App. Ct. 227, 228 (1977).

[7]The defendants' answer filed January 31, 1990, had raised insufficient notice to the clerk as their first affirmative defense. It is unclear from the record why that issue was not addressed until long after trial.

17, *Garfield* v. *Board of Appeals of Rockport,* 356 Mass. 37, 39 (1969), which the courts have "policed in the strongest way," *Pierce* v. *Board of Appeals of Carver,* 369 Mass. 804, 808 (1976), and given "strict enforcement," *O'Blenes* v. *Zoning Bd. of Appeals of Lynn,* 397 Mass. 555, 558 (1986). However, the decisions have not equated strict enforcement and strong policing with inflexible literalness. Not all errors in the procedures under § 17 require dismissal; "timely institution of an appeal [under § 17] should be held a condition sine qua non, while other steps in the carrying out of the appeal should be treated on a less rigid basis." *Pierce* v. *Board of Appeals of Carver,* 369 Mass. at 811, citing *Schulte* v. *Director of the Div. of Employment Sec.,* 369 Mass. 74, 81 (1975).

Among the steps that have received "less rigid" treatment under the *Schulte* doctrine[8] has been the provision of notice to the town clerk when there have been lapses from the strict statutory requirements. "The purpose of the notice provision is to give interested third persons at least constructive notice

---

[8]The relevant portion of *Schulte,* which dealt with a similar statute, articulated an approach to problems of procedural compliance now accepted as authoritative:

"Sloppiness in following a prescribed procedure for appeal is not encouraged or condoned, but at the same time a distinction is taken between serious missteps and relatively innocuous ones. Some errors or omissions are seen on their face to be so repugnant to the procedural scheme, so destructive of its purposes, as to call for dismissal of the appeal. A prime example is attempted institution of an appeal seeking judicial review of an administrative decision after expiration of the period limited by a statute or rule. . . . With respect to other slips in the procedure for judicial review, the judge is to consider how far they have interfered with the accomplishment of the purposes implicit in the statutory scheme and to what extent the other side can justifiably claim prejudice. After such an assessment, the judge is to decide whether the appeal should go forward without more, or on terms, or fail altogether." *Schulte* v. *Director of the Div. of Employment Sec.,* 369 Mass. at 79-80 (citations omitted).

This is entirely in keeping with the modern judicial attitude toward procedural issues, which favors decisions on the merits, disfavors decisions on the basis of mere technicalities, and seeks to assist, not hinder, persons who have cognizable legal claims to bring their problems before the courts. See *Foman* v. *Davis,* 371 U.S. 178, 181-182 (1962).

of the appeal. Strict compliance with all the details of the notice provision is not required, so long as notice adequate to serve the purpose of the provision is given within the period limited." *Costello* v. *Board of Appeals of Lexington*, 3 Mass. App. Ct. 441, 443 (1975). See also *McLaughlin* v. *Rockland Zoning Bd. of Appeals*, 351 Mass. 678, 680, 682 (1967). Moreover, in addressing the notice requirement of § 17 (and its predecessor, former G. L. c. 40A, § 21), the Supreme Judicial Court has "indicated [its] reluctance to construe strictly its provisions when to do so would be tantamount to attributing to the Legislature an intent 'to create a series of procedural barriers reminiscent of an earlier age of the law.' " *Carr* v. *Board of Appeals of Saugus*, 361 Mass. 361, 362 (1972). See also *Becton, Dickinson & Co.* v. *State Tax Commn.*, 374 Mass. 230, 233 (1978) ("statutes embodying procedural requirements should be construed, when possible, to further the statutory scheme intended by the Legislature without creating snares for the unwary").

Guided by these principles, the Supreme Judicial Court has held that the statutory requirement of notice to the town clerk has been satisfied by providing the clerk with only notice of the action but not a copy of the complaint, *Carr*, *supra*; by providing the clerk with only a copy of the complaint but not formal notice of the action, *McLaughlin* v. *Rockland Zoning Bd. of Appeals*, 351 Mass. at 679-680; and by delivering notice of action and a copy of the complaint to the clerk at her home after the close of the clerk's office on the twentieth day, *Garfield* v. *Board of Appeals of Rockport*, 356 Mass. at 39. The key element of these decisions relaxing the rigors of strict compliance with the zoning appeal statute is that within the mandatory twenty-day period the clerk[9] is actually notified that an appeal — i.e., a com-

---

[9]The commencement of Konover's judicial review proceeding was brought to the attention of both the town clerk, Doris Hill, and the assistant clerk, Elizabeth Prouty. No statute or case appears to have differentiated between the duties of the clerk and an assistant clerk with regard to receiving notice of action, and we deem it unlikely that their actual duties in this respect differ in any material way. The defendants concede that service on the assistant clerk would be the equivalent of service on the

plaint — has in fact been timely filed. The statutory purpose is then served, because "interested third parties [can] be forewarned [by the clerk] that the zoning status of the land is still in question."[10] *Carr* v. *Board of Appeals of Saugus*, 361 Mass. at 363. Contrast *County of Norfolk* v. *Zoning Bd. of Appeals of Walpole*, 16 Mass. App. Ct. 930 (1983) (telephoning the clerk within the twenty-day period to express an intent to appeal the board's decision is insufficient).

*Garfield* is particularly instructive, because the court expressly rejected the contention that both the notice of the action and a copy of the complaint must be physically filed in the clerk's office in order that, as the board of appeals there argued, "an interested person should be able to depend on the state of the record in the clerk's office at the close of business on the last day for filing." 356 Mass. at 39. The decision makes it clear that it is the state of the clerk's knowledge, not the physical location of the papers, that controls.[11] The present case is even stronger than *Garfield* or *Carr*, because the complaint itself was, to the actual knowledge of the clerk and the assistant clerk, easily and immedi-

---

clerk. See G. L. c. 41, § 19 (assistant clerk, in the absence of the clerk, has all the clerk's powers and duties and is subject to all the same requirements); Randall & Franklin, Municipal Law and Practice § 222 (3d ed. 1982).

[10]Assistant clerk Prouty testified, somewhat surprisingly, that, in the seventeen years she had been in the Auburn clerk's office, no one had ever asked to see any of the papers in a pending zoning appeal.

[11]We do not read *O'Blenes* v. *Zoning Bd. of Appeals of Lynn*, 397 Mass. 555 (1986), as compelling a different result. Although the court there stated that a § 17 appeal is rightly dismissed "if the plaintiff has failed to file a notice of the appeal in the clerk's office within twenty days after the filing of the board's decision," *id.* at 558, that language was dictum, and the case is distinguishable. In *O'Blenes*, as well as in the opinions it cited for the quoted statement, the town clerk did not receive notice or knowledge of the appeal until *after* expiration of the twenty-day period, unlike the present case. Moreover, *O'Blenes* and the cases it relied on focused on what was filed as well as when it was filed, not the location of the filing. None of them established the rigid rule that filing or delivery outside of the clerk's office was a per se violation of § 17's requirements. The holdings of *Costello, Carr, McLaughlin,* and *Garfield* supporting our disposition here have never been repudiated and remain good law. See *Boston Gas Co.* v. *Assessors of Boston*, 402 Mass. 346, 348 (1988).

ately accessible for the perusal of any interested person who might inquire at the clerk's office. Interested third persons then would not merely be forewarned of the pending controversy, but would have the opportunity to review its details for themselves, to the same practical extent as if the complaint had been handed to the clerk on December 22, 1989.[12]

Our conclusion, that the purpose of the notice provision was served in the circumstances of this case, is buttressed by the strong presumption that a public official will perform honestly and impartially and will properly discharge the duties of her office in the public interest. See *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 459 (1983); *Foster from Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284, 293-294 (1980). A necessary corollary to that presumption is that the official will not "wilfully shut [her] eyes to the means of acquiring knowledge which [s]he knows are at hand and thus escape the consequences which would flow from the notice had it been actually received." *Conte* v. *School Comm. of Methuen*, 4 Mass. App. Ct. 600, 605 (1976). This is in keeping with the "well settled [principle] that '[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop.' " *Commonwealth* v. *Olivo*, 369 Mass. 62, 69 (1975), quoting from *Essex Natl. Bank* v. *Hurley*, 16 F.2d 427, 428 (1st Cir. 1926). Cf. *Consent to Adoption of a Minor*, 363 Mass. 537, 543-544 (1973) ("jurisdiction did not depend on whether the present petitioner chose to receive the notice mailed to her or whether, as appears, she chose not to

---

[12]Konover asserts that assistant clerk Prouty independently knew of the appeal by virtue of the double service of the summons and complaint addressed to her husband and delivered to her home within the twenty-day period, and that she had a duty to transmit those papers to the clerk's office. We find no evidence in the record, however, indicating that Ms. Prouty actually knew of the service upon her husband, however much our common experience would lead us to infer that he most probably informed her of it, given their common opposition to Konover's proposal. The husband's knowledge cannot be imputed to his wife. Cf. *Hannon* v. *Schwartz*, 304 Mass. 468, 470 (1939).

receive it and further to ignore the postal notice that the . . . letter was available to her").

Accordingly, Konover's action should not have been dismissed. The technical error or omission in Konover's attempted service upon the clerk was a "relatively innocuous" misstep that was not "so repugnant to the procedural scheme, so destructive of its purposes, as to call for dismissal. . . ." *Schulte* v. *Director of the Div. of Employment Sec.,* 369 Mass. at 79. The procedural lapse did not "interfere[ ] with the accomplishment of the purposes implicit in the statutory scheme" — all of the defendants as well as the clerk's office were actually and seasonably alerted to the Konover complaint for judicial review — and no one representing the interests of the town of Auburn "can justifiably claim prejudice." *Id.* at 80. Cf. *Twomey* v. *Board of Appeals of Medford,* 7 Mass. App. Ct. 770, 774 (1979). We reverse the judgment of the Land Court and remand the case for a decision on the merits.[13]

*So ordered.*

---

[13]Our decision should not be taken to imply that we condone Konover's procedural misstep, which might have been fatal in different circumstances. Strict compliance with § 17 is not an undue burden; nor would be an inquiry directly to the town clerk's office prior to the expiration of the twentieth day as to the fact of the clerk's receipt of the papers. Double-checking the accomplishment of such jurisdictional and potentially outcome-determinative matters appears to be well within the duty of competence which a lawyer, as a fiduciary, owes to the client — a duty that cannot be delegated without proper supervision and control.