Modern Dispersions, Inc. *vs.* Commissioner of the Department of Employment and Training.[1]

No. 95-P-1907.

Worcester. December 13, 1996. - April 18, 1997.

Present: Ireland, Greenberg, & Laurence, JJ.

*Employment Security,* Procedure. *Words,* "Good cause."

In an action brought under G. L. c. 151A, § 42, seeking review of a decision of the board of review of the Department of Employment and Training prohibiting the employer from participating as a party in any further proceedings concerning a former employee's claim for unemployment insurance benefits because the employer had returned a certain information form to the department six days late and without good cause, the matter was remanded to the department for further proceedings where the procedural breach was innocuous and where, in any event, no prejudice was shown inasmuch as the employer had, by letter to the department, timely furnished the information required by the form. [508-511]

Civil action commenced in the Leominster Division of the District Court Department on November 14, 1994.

The case was heard by *Austin T. Philbin,* J.

*Stephen M. CampoBasso* for the plaintiff.

*Mary Murphy-Hensley,* Assistant Attorney General, for the defendant.

*Vida K. Berkowitz* for Bradford Verge.

Greenberg, J. Modern Dispersions, Inc. (employer), appeals from the judgment of a District Court affirming the decision of the board of review of the Department of Employment and Training (department) that the employer's untimely return of a request for separation and wage information (Form

---

[1]Bradford Verge, the former employee and claimant, has cross-appealed from the District Court order granting the employer's motion to strike him as a party to the appeal from the good cause determination.

1062) was without good cause. This decision prohibited the employer from participating as a party in any further administrative proceedings concerning its former employee's claim for unemployment insurance compensation. We reverse and remand the case for further proceedings.

This, in outline, is the procedural setting of the dispute. On June 17, 1994, the employer discharged its chief financial officer for alleged misconduct in the performance of his duties. The employee filed a request for benefits. As required by G. L. c. 151A, § 38, on July 11, 1994, the department sent the employer Form 1062.[2] Addressing the employer, the form indicated on its face, "In order for you to participate in any further issues regarding this claim, this form must be completed and returned postmarked no later than 07-21-94." Prior to receiving the form, the employer had retained counsel to handle all matters involving the claimant's discharge. At the hearing before the review examiner, the employer indicated that, upon receipt of the form on July 18, 1994, the plant manager transmitted a copy by facsimile to its lawyer. On that day, the employer's lawyer wrote the department a

---

[2]The form was adopted pursuant to G. L. c. 151A, § 38(*a*), as amended through St. 1990, c. 177, § 290, which permits the commissioner to prescribe the "form, the time and the manner" in which benefit claims shall be filed and required reports presented. Section 38(*b*), as amended through St. 1990, c. 177, § 290, of the statute reads as follows:

"Notice of a claim so filed shall be given promptly by the commissioner or his authorized representative to the most recent employing unit of the claimant and to such other employing units as the commissioner may prescribe. If such employing unit has reason to believe there has been misrepresentation or has other reasons which might affect the allowance of said claim, or has been requested by the commissioner to furnish any other pertinent information relating to said claim, it or he shall return the said notice to the indicated employment office with the reasons or information stated thereon within eight days after receipt, but in no case more than ten days after mailing of said notice, in accordance with the procedure prescribed by the commissioner. *Failure without good cause to return said notice and information within the time provided in this section or prescribed by the commissioner shall bar the employing unit from being a party to further proceedings relating to the allowance of the claim*, and failure knowingly to return it within such time shall subject the employing unit to the penalties provided in section forty-seven. For the purposes of this subsection, it shall be deemed that said notice has been returned as of the date indicated by the postal cancellation stamp thereon." (Emphasis supplied.)

letter outlining objections to the allowance of the employee's claim; the department received the letter before the ten-day statutory deadline had lapsed. The original form was retained by the employer until July 27, when it was finally mailed (and a copy was transmitted by facsimile) to the department in response to a telephone call from the local department office. On July 29, 1994, a representative of the department contacted the employer for an explanation of the late mailing. Though the employer knew that the department had not received the form until six days after the deadline, it failed to provide any reason for the delay. That same day, the department issued a decision that the employer did not have good cause for the untimely return; the employer requested a hearing which took place before a review examiner for the department.

At the hearing before the review examiner, an employee from the employer's human services department testified that she assumed that counsel would mail the form together with a letter explaining the reasons for the employee's separation or that the letter from counsel was sufficient. In his closing statement to the review examiner the employer's lawyer argued that his letter containing the employer's version of the reasons for the employee's separation from employment should suffice. One excuse proffered for delay was that certain information, as appeared on the form when sent to the employer, was inaccurate. In any case, he characterized the lapse as an unfortunate, but harmless, mistake. The review examiner disagreed; he found that the employer should be held accountable for what he considered counsel's error or omission. As a result, the employer was barred from participation for inability to show good cause for failure to respond within the period prescribed by G. L. c. 151A, § 38(b). The employer appealed to the board of review which denied the employer's application for review and thus made the review examiner's decision its own. See G. L. c. 151A, § 41 (c). The employer filed a complaint for judicial review under G. L. c. 151A, § 42. A judge of the District Court affirmed the decision. We reverse.

Although a finding of "good cause" is mainly a question of fact, we must review whether the review examiner properly construed the meaning of "good cause" as applied to the facts of this case. See *Khodaverdian* v. *Department of Employment*

*and Training*, 39 Mass. App. Ct. 414, 416-417 (1995). The department's regulations, see 430 Code Mass. Regs. § 5.04(4) (1993), state, in pertinent part, that "[a]n employer may be considered to have good cause provided [it] can establish to the satisfaction of the Commissioner that such failure was without fault on the part of the employer or his agent and was due to circumstances over which he had no control." See *Walker* v. *Director of the Div. of Employment Sec.*, 382 Mass. 361, 364 (1981) (claimant directly discouraged by administrative official from pursuing appeal has good cause); *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 781 (1982) (good cause shown where agency originally misaddressed notice to employer); *Khodaverdian* v. *Department of Employment and Training*, 39 Mass. App. Ct. at 416 (good cause includes personal reasons that present a reasonable excuse for the delay). In his findings of fact, the review examiner attributed the delay to a "miscommunication" between the employer and his counsel. The examiner concluded, and we think correctly, that the employer was not without fault. A miscommunication between two parties must necessarily be owing, in part, to the fault of each. Thus, the employer can neither say that it was "without fault" in failing to respond within the ten-day period, nor that it "was due to circumstances over which [it] had no control." 430 Code Mass. Regs. § 5.04(4), *supra.*

Our inquiry, however, does not end there. The Supreme Judicial Court has stated repeatedly, in cases arising under G. L. c. 151A, that following prescribed procedure is important, "but at the same time, a distinction is taken between serious missteps and relatively innocuous ones." *Schulte* v. *Director of the Div. of Employment Sec.*, 369 Mass. 74, 79-80 (1975). Digesting its own decisions, the *Schulte* court held that:

> "Some errors or omissions are seen on their face to be so repugnant to the procedural scheme, so destructive of its purposes, as to call for dismissal of the appeal. . . . With respect to other slips in the procedure for judicial review, the judge is to consider how far they have interfered with the accomplishment of the purposes im-

plicit in the statutory scheme and to what extent the other side can justifiably claim prejudice."[3]

Nothing in the record demonstrates that the late filing of the form interfered with the accomplishment of the purpose of the statutory scheme. The Massachusetts Unemployment Insurance Service Representative Handbook § 1632 (1991), which was provided by the parties in the record appendix, states that the purpose of the ten-day limitation embodied in G. L. c. 151A, § 38(*b*), is to enable the department promptly and accurately to assess claims. The regulations, however, provide that, "[w]henever an employer has failed to provide wage information within the [ten-day] time limit prescribed in 430 [Code Mass. Regs. § ] 5.04(1), the Commissioner shall establish the claimant's benefit rights on the basis of the claimant's own statement of wages received in such employment with said employer supplemented by *such other evidence as may be available* and satisfactory to the Commissioner." 430 Code Mass. Regs. § 5.04(3) (1993) (emphasis supplied). We conclude, therefore, on this record, particularly in light of

---

[3]The *Schulte* case involved § 42 of G. L. c. 151A, a different section from the one at issue here. Nevertheless, the rationale in *Schulte* "depended not on the specific rule involved, but rather on the recognition that some procedural errors are not serious enough to warrant automatic dismissal of the petitioner's appeal." *Simpson* v. *Director of the Div. of Employment Sec.*, 391 Mass. 403, 404 (1984). The *Simpson* case involved G. L. c. 151A, § 42, as amended by St. 1978, c. 478, § 79, whereas *Schulte* involved the 1971 version of the statute. The court has applied the same reasoning in cases involving entirely different statutes. See *Cohen* v. *Board of Registration in Pharmacy*, 347 Mass. 96, 99 (1964) (court reversed lower court's allowance of interveners' motion to dismiss because no prejudice resulted from failure to serve notice within ten days as required by G. L. c. 30A, § 14); *Opie* v. *Board of Appeals of Groton*, 349 Mass. 730, 733-734 (1965) (court examined purpose of G. L. c. 40A, § 21, and determined that failure to attach copy of decision of board of appeals to copy of bill in equity appealing the decision that is served on the defendant did not defeat purpose of statute); *Staman* v. *Assessors of Chatham*, 350 Mass. 100, 101 (1966) (G. L. c. 58A, § 13); *Richardson* v. *Zoning Bd. of Appeals of Framingham*, 351 Mass. 375, 378 (1966) (failure to comply with notice provision of G. L. c. 40A, § 16, did not invalidate proceedings where no prejudice resulted); *Konover Mgmt. Corp.* v. *Planning Bd. of Auburn*, 32 Mass. App. Ct. 319, 323-327 (1992) (even though compliance with notice provisions of zoning appeal statute, G. L. c. 40A, § 17, is jurisdictional and strictly enforced, no dismissal for technical noncompliance where official to be notified was actually aware of the party's complaint and the purpose of the statute was therefore served, with no prejudice to the town).

counsel's timely letter containing the separation information, that the omission was inoffensive. The letter detailed the precise type of information that the statute requires an employer to provide when protesting a claim. Section 38(*b*) provides, in pertinent part, "[i]f [the employer] has . . . reasons which might affect the allowance of said claim, . . . it or he shall return the said notice to the indicated employment office with the reasons or information stated thereon . . . ."[4] While it is unclear whether the department considered the information contained in the letter in rendering its initial determination to deny benefits, it is uncontested that the department did possess the information. According to the regulations, therefore, the commissioner had the discretion to consider the letter as "such other evidence" available to him.

Because the commissioner had the discretion to consider the letter, the employer's breach of procedure was innocuous. Within ten days of the mailing of the notice, the department had before it all of the information necessary swiftly and accurately to render a determination. The only information elicited by Form 1062 that was not included in the letter was wage data. The form itself, however, expressly states that "[w]age information is not required." This case, therefore, falls into the category of nonprejudicial mistake.

The decision of the District Court is reversed.[5] Judgment is to be entered remanding the case to the Department of Employment and Training for further proceedings consistent with this opinion.

*So ordered.*

---

[4]According to the letter sent to the department by counsel on July 18, 1994, the employer objected to the claim due to the claimant's misconduct which included:

> "1. [The employee] exploited his position as Chief Financial Officer to arrange his receipt of life insurance and disability insurance packages without the express consent of his employer; and

> "2. [The employee] obtained inappropriate authorization to sign on corporate checking accounts, without ever receiving authorization or permission to do so."

[5]Because this opinion is dispositive of the good cause issue and there will be no further proceedings on the matter of good cause, the issue of the claimant's participation in the good cause determination, which was raised by the cross appeal, does not need to be addressed.