Agnes, A.J.
This is a civil action in which the plaintiffs, Russell R. Falardeau and Sherry L. Falardeau, appeal under G.L.c. 40A, §17 from the decision of the Zoning Board of Appeals of the Town of Northbridge (“ZBA") granting a Special Permit to the defendant Trees to Keys, Inc. (‘Trees’’) to allow Trees to build a single-family home on what is referred to as a “retreat lot” as defined by Section 173-18.1 of the Zoning Bylaws of the Town of Northbridge (“Bylaw”). The defendant Trees has filed a motion in limine seeking a judicial determination in advance of trial of the meaning of a portion of the Bylaw. Because the parties agree that the decision on the motion will be dispositive of the appeal, the court will act on the motion in advance of the trial.
FACTS
The essential facts relating to the motion in limine are not in dispute. Defendant Trees is the owner of certain premises located at 2060 Quaker Street in Northbridge, Massachusetts. The plaintiffs are residents of 2094 Quaker Street in Northbridge. Trees own a parcel of land consisting of approximately 2.25 acres of land that appears as lot 49 on Plat 27 of the Town of Northbridge Assessors Plats, a plan that is attached to the plaintiffs complaint. The lot is shown in more detail on a proposed subdivision plan known as “Common Driveway Plan of Land in Northbridge, Mass.” that was marked “A” for identification and used as a chalk during the hearing (hereafter “subdivision plan”). The subdivision plan shows a proposed five-lot subdivision of lot 45. According to the plan, four building lots would be created (including the so-called retreat lot) by the proposed subdivision with a fifth lot containing an existing home. The subdivision plan also shows a configuration of the lots that seeks to take advantage of an existing driveway to service 3 of the lots and a proposed driveway to serve the “retreat lot” in order, as defendant Trees maintains, to avoid the need to cross a wetlands. Each of the proposed lots would comply with the frontage and minimum lot size requirements of the zoning bylaws.
Trees sought a special permit[1] from the ZBA pursuant to §173-18.1 to construct a single-family home on a portion of their property designated as a “retreat lot.” This bylaw provides that
[flor the purpose of creating reasonable use of backland for residential uses there may be established so-called retreat lots, pork chop lots or hammer head lots, the building upon which may be authorized by the issuance of a special permit by the Zoning Board of Appeals as special permit granting authority, subject to the following requirements:
1. Said lot shall be entirely within a residential zoning district.
2. Said lot has a minimum street frontage of not less than 40 feet and a width of not less than 40 feet at all points between the street and the nearest part of the principal building.
3. The area of said lot is to be at least twice the minimum lot size allowed in R-l and R-2, three times the minimum in R-3, four times the minimum in R-4 and five times the minimum in R-5.
4. The minimum lot width at the building line equals or exceeds the required street frontage distance.
5. Said lot shall otherwise be in compliance with all requirements of the Zoning Chapter applicable to the zoning district in which said lot is located.
*97 6. Said lot shall not have contiguous frontage with any other lot which has been granted a special permit pursuant to this section.
7. At the time the application for a special permit is submitted, all other lots contiguous to said lot shall conform to the requirements of the zoning district in which it is located.
8. Said lot shall not be further subdivided.
9. The access of said lot shall be within the boundary lines of the lot and shall not be subject to any right-of-way nor any public or private easement.
10. No permit shall be issued, pursuant to this chaper, unless said lot is situated on a public way accepted by the Town of Northbridge.
11. Said lot shall be in harmony with the general purpose and intent of the Zoning Chapter."
Trees’ application, which is attached to the plaintiffs complaint, states that Trees was not requesting a variance from the provisions of the Zoning Bylaw, and that it maintains it met all of the requirements for a retreat lot under §173-18.1 of the Zoning Bylaw. The ZBA held a public hearing on the defendant’s application on May 9, 2002. The ZBA voted 5-0 to grant the application. It’s reasoning, which is set forth in a written decision attached to the plaintiffs complaint, was that Trees sought the approval in order to minimize the number of driveways and to thereby avoid a configuration that necessitated the crossing of a wetland, and that it met the eleven requirements for a retreat lot “with the access for the retreat lot only, until such time as they apply for a Variance for a common driveway.” In particular, the ZBA ruled that “the establishment of a retreat lot versus a five-lot subdivision is a reduction in density, environmental disturbance, traffic and is better for the neighborhood.” Decision of the ZBA at 2 (attached to plaintiffs complaint) (“ZBA decision”). According to the ZBA,
The subject lot actually has enough frontage to be a buildable lot. However, this frontage is not continuous as it surrounds lot 1 (see plot plan). If the subject lot was developed as originally planned, it would result in a crossing over wetland of the common driveway of the other three parcels. Therefore, the applicant is reducing the frontage of the subject lot, giving it 62.36 feet, and requesting a Special permit for a retreat lot. The purpose is to reduce the environmental impact of the wetlands crossing. The subject lot meets all eleven requirements for a retreat lot. . . The Board noted that the subject lot met all the requirements for a retreat lot . . . [T]he Board noted that the subject lot, as it stands now, is a buildable lot. Therefore, whether or not the special permit is granted, the lot would be developed. The Board concluded that rather than being a detriment to the neighborhood, granting the special permit would be beneficial, when the scope of the entire project is considered.
ZBA decision at 2.[2]
COURT’S REASONING
1. Introduction
The single question presented by the motion in limine concerns the meaning of subsection G of §173-18.1 of the Zoning Bylaw of the Town of Northbridge. This subsection reads as follows: “At the time the application for a special permit is submitted, all other lots contiguous to said lot shall conform to the requirements of the zoning district in which it is located.” The plaintiffs maintain that the plain meaning of this subsection is that in order for a lot to qualify as a retreat lot, all of the lots contiguous to it, i.e., not only the lots belonging to the applicant, must meet the requirements of the zoning district. Here, one of the parcels that is contiguous to the proposed retreat lot is described as part of the Upton State Forest, and it is unclear whether this parcel conforms to the requirements of the zoning district in which it is located. The defendant Trees also points to the plain language of the bylaw and maintains that the phrase “the zoning district in which it is located” refers only to lots owned by the applicant because the singular “it” modifies the earlier phrase (“all other lots") such that there should only be consideration of the applicant’s property.[3]
2. Disputes Over the Meaning of a Zoning Ordinance or Bylaw
When as in this case there is a dispute about the scope or application of a zoning bylaw, it is the responsibility of this court under G.L.c. 40A, §17 to determine the meaning of the bylaw. Although the meaning of a term or phrase in a zoning bylaw presents a question of law for the court, deference must be given to the interpretation reached by the local board which enjoys the advantage of greater knowledge of local conditions and the history and purpose of zoning laws in that community. See Manning v. Boston Redevelopment Authority, 400 Mass. 444, 452-53 (1987); Building Commissioner of Franklin v. Disp. Comm., N.E., 48 Mass.App.Ct. 709, 713 (2000); Murray v. Board of Appeals of Barnstable, 22 Mass.App.Ct. 473, 479 (1986). The Court thus may not simply substitute its judgment for that of the local board or authority under the guise of de novo review. See Building Commissioner of Franklin v. Disp. Comm., N.E., 48 Mass.App.Ct. 709, 716-18, rev. den., 431 Mass. 1104 (2000).
In ascertaining the meaning of a zoning ordinance or bylaw, this court must give the words used by the city or town legislative body their common and approved meaning just as it is required to do with respect to statutes. See 1A N.J. Singer, Sutherland On Statutory Construction §30.6 (6th ed. 2002). When the words have a plain and ordinary meaning, they should receive that same meaning from a court unless there is strong reason to believe.that another and different *98 meaning was intended. See Iodice v. City of Newton, 397 Mass. 329, 332-33 (1986).
3. Interpretation of Ambiguous Language in a Zoning Bylaw
Under the so-called plain meaning rule, the zoning bylaw in question can be read in a manner that is consistent with both of the interpretations advanced by the parties. While the text of a bylaw or statute is always the appropriate place to begin (and often to end) an inquiry about its meaning, it does not fully describe the court’s task. The classic statement of the court’s task in a case such as this was made by Chief Justice Arthur Prentice Rugg.
The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of the framers may be effectuated.
Hanlon v. Hardon, 286 Mass. 444, 447 (1932) (Rugg, C.J.), citing Commonwealth v. S.S. Kresge Co., 267 Mass. 145, 148 (1929) (Rugg, C.J.). See also Bartlett v. Greyhound Real Estate, 41 Mass.App.Ct. 282, 286 (1996). The duty to ascertain the intent of the legislative body is so central to the judicial function that principles of statutory construction require the court to disregard the plain and unambiguous meaning of words used in a statute when a literal interpretation of the words would defeat the intention of the legislature, see Holbrook v. Holbrook, 18 Mass. (1 Pick.) 246, 250 (1822), render other provisions of the statute meaningless, Fleming v. Contributory Retirement Appeal Board, 431 Mass. 374 (2000), or produce absurd results. See Attorney General v. School Committee of Essex, 387 Mass. 326, 336-37 (1982). See also Lehan v. North Main Street Garage, 312 Mass. 547, 550 (1942) (Rugg, C.J.) (“If a liberal, even if not literally exact interpretation, of certain words is necessary to accomplish the purpose indicated by the words as a whole, such interpretation is to be adopted rather than one which will defeat that purpose”).
In the present case, a consideration of matters beyond the text of §173-18.1(G) is instructive. The purpose of this particular zoning bylaw suggests that the interpretation favored by defendant Trees and adopted by the ZBA best serves the intent of the legislative body which adopted it. The Town of Northbridge has expressly stated that the purpose of § 173-18.1 of its zoning law is to create “reasonable use of backland for residential uses.” Trees Memorandum of Law at 2 quoting §173-18.1. If the plaintiffs interpretation is followed, persons who seek to establish a retreat lot might find it necessary to conduct engineering studies and surveys of their neighbor’s property to insure that zoning non-conformities do not exist and the ZBA would have to evaluate such evidence in every case. Obtaining such data could be very costly and very difficult. Processing such data could be burdensome to the ZBA. If a contiguous parcel to a proposed retreat lot was a landlocked parcel of forest or conservation land that had no other use, as defendant’s maintain is the case here, it would seem that the purpose of the retreat lot exception would be defeated.
Also, when the other 10 conditions set forth in §173-18.1 as a requirement for a valid retreat lot are examined, it is apparent that the drafters of the zoning bylaw were referring principally, though not exclusively, to conditions present on the property owned by the applicant.
The final and most persuasive reason for adopting the defendant Trees view of the meaning of the local bylaw is that it is consistent with the interpretation followed by the ZBA below. In the context of zoning law and the exercise of judicial review under G.L.c. 40A, §17, courts should give great deference to the view taken by the local authority when “in the discretionary exercise of its expertise, [it has] made a choice between two fairly conflicting views.” Davis v. Zoning Board of Chatham, 52 Mass.App.Ct. 349,365 (2001), and cases cited. Here, the ZBA, charged with the administration of §173-18.1 and mindful of the purpose of the zoning laws in the Town of Northbridge fairly considered the case and reached a judgment about the meaning of the bylaw[4] that is consistent with the express language of §173-18.1, with the overall purpose of the local zoning law, and that serves to advance other important interests as well.
CONCLUSION
For the above reasons, this court rules on the defendant Trees motion in limine as follows: the phrase “all other lots contiguous to said lot” as it appears in §173-18.1(G) of the Zoning Bylaw of the Town of Northbridge, refers exclusively to lots owned by the applicant. The matter will stand for further hearing.

 “Special permits govern that class of uses that lie between those that are prohibited and those that, because they comply with the zoning code in all detail, are allowed as of right. See Bobrowski, Massachusetts Land Use and Planning Law §9.1, at 342 (1993).” Duteau v. Zoning Board of Appeals of Webster, 47 Mass.App.Ct. 664, 667-68 (1999). The general rule is that “(s)pecial permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and . . . such permits may also impose conditions, safeguards and limitations on time or use.” G.L.c. 40A, §9. The burden of proof rests on the party who seeks the special permit. Dowd v. Board of Appeals of Dover, 5 Mass.App.Ct. 148, 154-55 (1977).

 Apart from the question whether the defendant Trees proposed lot meets the requirements for a retreat lot, there is no dispute over whether the property owned by the plaintiff and the proposed lots conform to the requirements for the R-2 district in the Town of Northbridge.

 It might be argued that under the plaintiffs interpretation the word “other” would appear to be superfluous. However, mere grammatical imprecision should not be the linchpin of *99 statutory interpretation. See, e.g., Metropolitan Youth Services Inc. v. State Lottery Commission, 2000 WL 153820 (Mass. Super.) (Agnes, J.).

 At oral argument, the defendant ZBA specifically stated that it took no position before this court on the correct interpretation of Section 173-18.1 oftheTownofNorthbridge Zoning Bylaw. However, its decision below is certainly based on an interpretation of the bylaw and it is that view which the court finds is deserving of respect and should be followed.