White, Catherine A., J.
These cases stem from a dispute concerning land in the Town of West Dennis, Massachusetts (“Town”). On October 10, 2002, the plaintiff, Albion Howard (“Howard”) commenced the first action, No. 02-635, in Barnstable Superior Court. Howard’s complaint alleged trespass and requested declaratory relief against the defendant, William Daniels, Trustee of the Walker Realty Trust[3] (“Walker”) in relation to a private way known as Richard Lane. Relying on G.L.c. 183, §58, Howard argues that he owns the fee in Richard Lane abutting his property and seeks to prevent Walker from trespassing on the private way.
On April 23, 2003, Howard filed a second complaint, No. 03-260, against Walker, also naming as defendants the members of the Town of Dennis Planning Board (“Planning Board”) and David and Kimberly McCrossin.[4] In this complaint, Howard appeals the Planning Board’s decision granting a Special Permit to Walker. The Special Permit allows two principal residential structures to be built on defendant Walker’s lot located in the Town. Howard seeks relief in the form of a declaratory judgment declaring that the Planning Board exceeded its authority and annulling the decision of the Planning Board, or a remand to the Planning Board for further proceedings.
In September of 2004 these two cases were consolidated. A trial, without a jury, was held on July 14, 2005 and July 15, 2005. After this trial, and based upon all of the credible evidence (including testimony, exhibits introduced at trial, and a view), the Court makes the following findings of fact and rulings of law.

FINDINGS OF FACT

Howard resides at 35 Tower Road, West Dennis and is the owner of two parcels of land identified as Lots 3 and 4 in the Richard Lane Subdivision. Walker, the defendant, owns the property located at 803 Main Street which is to the west of Howard’s property. The Walker property was originally depicted as two lots on the “Plan of Land in West Dennis, MA,” but is not shown as one lot on a more recent version of the same plan. The Howard property and the Walker property are separated by the private way known as Richard Lane. Jannette Taylor (“Taylor”) purchased the land comprising what is known as the Richard Lane subdivision from Miriam Vincent in 1962. In 1966, Taylor created a six-lot subdivision, with Richard Lane to the west of the subdivision. The 1966 subdivision plan (“Richard Lane Subdivision Plan”) (Exhibit 3) recorded by Taylor depicts the six lots, each with frontage on Richard Lane.
Richard Lane is described as a forty (40) foot wide private way, starting at the southeasterly boundary of Lot 1 and extending to the northwesterly boundary of the undesignated lot bordering Route 28. The subdivision plan also shows a twelve (12) foot wide right of way laid out by the Town Selectmen in 1851. This right of way runs south from Route 28 to Richard Lane. In addition, the 1966 subdivision plan depicts an “overgrown wood road” which extends south of the 12’ wide right of way and overlaps with parts of Richard Lane.
In 1966, Taylor granted an easement of a right of way to Frederick O. Sprague (“Sprague”) and Edward F. Simpson (“Simpson”), Trustees of S&S Realty Trust, over the 40’ private way shown on the Richard Lane Subdivision Plan. Sprague and Simpson were the owners of the property located to the west of the Richard Lane subdivision property and shown on the Richard Lane Subdivision Plan as the land of “Harold W. Whiting.” That same year, Sprague and Simpson released to Taylor “all their right, title and interest, if any, we have in a traveled way . . . and an overgrown wood road” shown on the Richard Lane Subdivision Plan.
Walker argues that the 1851 Selectmen layout and the “overgrown wood road” are in fact one continuous way. Howard believes that the 1851 private way does *577 not include any portion of the area now shown as Richard Lane and does not overlap Richard Lane. The court finds that the 1851 Selectmen layout and the “overgrown wood road” together make up what is referred to as the Ancient Way.[5]
In 1966, the Town approved the Richard Lane Subdivision with a covenant directing Taylor to construct the way. Between 1969 and 1981, despite a failure to comply with the covenant, Taylor transferred ownership of Lots 1 through 6. Howard acquired Lot 3 through a 1978 deed from Norman Zeigler. He also acquired Lot 4 in 1978, through a deed from Cyd Zeigler. In all of the conveyances, Taylor referred to Richard Lane as a “private way.” Four of the six deeds to the subdivision lots gave the grantees the rights to use Richard Lane and reserved the same for Taylor and her heirs and assigns. This language of reservation was included in the deeds to Lots 3 and 4.
Walker acquired its property through a 2001 deed from John T. Callahan, III (Exhibit 27). In September of 2002, Taylor conveyed to Walker “an easement and right of way, in, over, under, through and upon Richard Lane.” Thereafter, Walker filed an approval not required (ANR) plan with the Planning Board seeking to create a new lot on the westerly side of Richard Lane, with frontage on Richard Lane. The ANR plan was on the agenda with the Planning Board for October 8, 2002. The Town Planner, Daniel Fortier, recommended that the ANR application be denied, finding that the plan did not meet the test established for endorsement of an ANR. The Town Planner was concerned that because Richard Lane was not paved, there would not be adequate access to the Walker lot. The Board declined to sign the plan and rescheduled the matter for October 21st.
On October 9, 2002, Walker commenced work on Richard Lane. Walker’s agents began grading and installing a hardened surface on Richard Lane in preparation for an inspection by the Dennis Fire Department, in order to provide access as recommended by the Town Planner. The next day, Howard filed his first complaint. Howard sought a temporary restraining order to prevent Walker from trespassing on Richard Lane. The order was entered, vacated, and then restored on January 10, 2003. The court restricted injunctive relief to that part of Richard Lane not overlapping an area known as the Ancient Way.[6]
In February of 2003, Walker applied for, and the Planning Board granted, a Special Permit under section 4.1 of the Town of Dennis Zoning By-Law to allow two principal residential structures on one lot. The Special Permit contained a condition that the recorded deed recombining the previously divided property be submitted to the Planning Board. The deed recombining the two properties is recorded at the Barnstable County Registry of Deeds. The decision of the Planning Board granting the Special Permit was filed with the Town Clerk on April 2, 2003. On April 23, 2003, the Town Clerk certified on the Special Permit that the decision had been filed on April 2nd and that no appeal was filed within the twenty-day period after the date of filing. Howard filed his appeal on April 23, 2003. There was some confusion by Howard as to the filing date because the last paragraph of the Planning Board’s decision states, “I certify that a copy of the original decision has been filed with the Town Clerk on April 3, 2003.” There was also a time stamp in the upper right hand corner of the decision which read “03 APR 2 PM 1:36.”
The Walker property is located in both the R40 and GCII Zoning Districts. The Town of Dennis By-Law §2.3.4.2.a permits two or more principal residential structures to be erected on the same lot in the R40 and GCII Zoning Districts, “provided that the minimum lot area, width and frontage shall be the sum of the requirements for each principal residential structure for the district in which the lot is located; and the distance between the buildings is a minimum of thirty (30) feet, all the requirements of the Bylaw’s Intensify and Use Schedule are met and site plan review is obtained.” The minimum lot area required for a dwelling unit in both the R40 and GCII districts is 40,000 square feet. The width required for a dwelling unit in both the R40 and GCII districts is 100 feet. The frontage requirement is 50 feet.
Walker’s property consists of 103,760 square feet or 2.38 acres. Therefore, the property has the requisite area for construction of two dwelling units because the area is greater than 80,000 square feet, as required under the By-law. The Walker property has over 150 feet of frontage on Route 28. This amount meets the requisite frontage for the construction of two dwelling units because the frontage is greater than the 100 feet required under the By-law. The parties disagree as to the width of the property. Specifically, the disagreement concerns from which point the width should be measured. Using the rear lot line as a measuring point, Walker contends that the width of the property is 271.59 feet. Howard argues that the width of the lot, as that term is defined under the Dennis Zoning Bylaw, is 153.6 feet. Walker believes that the lot is a panhandle lot; therefore, width is to be measured at some point other than as directed under the By-law. Howard disagrees with the characterization of the Walker property as a panhandle lot.

DISCUSSION

The central issues at trial concerned what rights, if any, Walker has in the Ancient Way and in Richard Lane. The issues arising out of the second complaint, pertaining to the Planning Board’s grant of the Special Permit and Howard’s appeal, are as follows: (1) Is Howard a “person aggrieved” for purposes of G.L.c. 40A, §17; (2) Did Howard file his appeal within the twenty (20) days required under G.L.c. 40A, §17; (3) Did the Planning Board properly grant the Special Permit to the defendant?

*578
The Ancient Way & Richard Lane

The Ancient Way includes both the 1851 Selectmen layout and the “overgrown wood road” and runs next to and overlaps with part of Richard Lane. Because the Ancient Way borders and in fact runs along a portion of its property, Walker has the right to use and improve the Ancient Way to make it passable for use.
Howard relies on G.L.c. 183, §58, to support the proposition that he is the record owner of the fee in Richard Lane abutting Lots 3 and 4. Section 58 of G.L.c. 183 establishes an authoritative rule of construction for all instruments passing title to real estate abutting a way. Tattan v. Kurlan, 32 Mass.App.Ct. 239, 242 (1992). The statute provides:
Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument shall be constructed to include any fee interest of the grantor in such way, watercourse or monument unless (a) the grantor retains other real estate abutting such way, watercourse, or monument, in which case (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such a way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding a side line.
Under the statute, any grant abutting a public or private way includes the fee interest of the grantor in the way — to the centerline if the grantor retains property on the other side of the way or for the full width if the grantor does not. G.L.c. 183, §58. The presumption could be overcome if the instrument of conveyance “evidences a different intent by express exception or reservation.” Id. Section 58’s mandate that title in the way is conveyed to the abutting grantee is stricter than the common-law rule that it superseded. Tattan, 32 Mass.App.Ct. at 242. The statute has been construed to include both an existing way and a proposed way, if sufficiently designated. Id.; Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 679-80 (1965). Richard Lane constitutes away for the purposes of the statute.
Howard is not eligible for the presumptive authority of full ownership of Taylor’s fee ownership in the way because when the conveyance of Lots 3 and 4 occurred, Taylor owned other lots on the same side of Richard Lane as Lots 3 and 4. For a fee over Richard Lane, Howard needs to rely on the exceptions within G.L.c. 183, §58. The first exception does not apply as it concerns a grantor’s retained ownership of land on the opposite side of the way. G.L.c. 183, §58. The second and relevant exception pertains to a grantor’s retained ownership of land on the same side. Id. This exception treats the grantee’s title in the way adjacent to the property as dependent upon proof that the grantor owns the way between the division line of the land granted and the land retained. Taylor owned the land adjacent to Lots 3 and 4, and accordingly, Howard’s predecessors in title took the entire width of Richard Lane adjacent to Lots 3 and 4.
The next issue is Taylor’s reservation of an easement over Richard Lane. In the deeds from Taylor to Howard’s predecessors in title, Taylor reserved for herself an easement appurtenant to the land. This easement extended to all of the land in that subdivision then owned by Taylor. An easement is to be interpreted as available for use by the whole of the dominant tenement existing at the time of its creation. Pion v. Dwight, 11 Mass.App.Ct. 406, 410 (1981). Taylor’s retention of an easement running with the land only extended to the land she owned. Murphy, 348 Mass. at 678-79; McLaughlin v. Amherst, 38 Mass.App.Ct. 162, 169 (1995). An easement is not construed to be personal, or in gross, unless it cannot be presumed fairly as appurtenant to some estate. Willets v. Langhaar, 212 Mass. 513, 575(1912). Taylor did not have an easement in gross, and a right of way appurtenant to the land cannot be converted by the owner of the dominant tenement (Taylor) into a personal easement to pass to or from other land adjacent to or beyond that to which the easement is appurtenant. Murphy, 348 Mass. at 678-79.
The language reserving rights of easement to Taylor were limited to “rights held by Taylor at the time of the conveyance.” Boudreau v. Coleman, 29 Mass.App.Ct. 621, 632 (1990). This reservation of rights did not create new personal rights for Taylor. Id. Having conveyed all other property prior to 2002, Taylor retained no interest in Richard Lane that would enable her to grant rights of way over Richard Lane to Walker. See Greene v. Canny, 137 Mass. 64, 68 (1884). In addition, a reservation of an easement in a deed in favor of one who is a stranger to the transaction is void. Hodgkins v. Bianchini, 323 Mass. 169, 172 (1948). As a stranger to the 1962 Vincent-Taylor deed and to Taylor’s deeds to Howard’s predecessors, Walker did not derive any easement rights from Taylor’s Grant of Easement and Assignment of Rights in 2002. Therefore, Walker is without deeded rights of easement over Richard Lane, and Howard has a fee interest in Richard Lane as it abuts Lots 3 and 4.

The Special Permit

The issues arising from the Planning Board’s grant of the Special Permit and Howard’s appeal are threefold. The first issue is whether Howard is a “person aggrieved” for purposes of G.L.c. 40A, §17. “Aggrieved person” status is a jurisdictional prerequisite to judicial review of a zoning board of appeals or other special permit granting body. Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass.App.Ct. 685, 687 (1994). Owners *579 of abutting property have the benefit of a rebuttable presumption of aggrievement. Riley v. Janeo Cent, Inc., 38 Mass.App.Ct. 984, 985 (1995). This presumption recedes when a defendant challenges a plaintiffs status as an aggrieved party and offers evidence supporting his or her challenge. Watros v. Greater Lynn Mental Health & Retardation Ass’n, Inc., 421 Mass. 106, 111 (1995). Inits answer to the complaint, Walker challenged Howard’s standing as an affirmative defense but did not present any evidence to support this challenge. See Valcourt v. Zoning Bd. of Appeals of Swansea, 48 Mass.App.Ct. 124, 128 (1999). Merely challenging an abutter’s standing in an answer or memoranda of law, without more, is insufficient. Id.
More importantly, Howard has status as a “person aggrieved” based on his claim of private property interest. The phrase “person aggrieved” means someone who can assert a plausible claim of private right, private property interest or private legal interest, as opposed to general public concern about a zoning question. See Com. v. Dowd, 37 Mass.App.Ct. 164, 166-67 (1994). As discussed above, Howard has a fee interest in Richard Lane abutting his property. Walker’s property has frontage on Richard Lane. Walker’s intention to build a second residential unit on his lot affects Howard’s private property interest in Richard Lane. Therefore, Howard is a “person aggrieved” for purposes of G.L.c. 40A, §17.
The second question is whether Howard filed his appeal within the tweniy (20) days required under G.L.c. 40A, §17. Pursuant to G.L.c. 40A, §17, “(a]ny person aggrieved by a decision of the board of appeals or any special permit granting authority . . . may appeal to the . . . superior court department in which the land is situated ... by bringing an action within twenty days after the decision has been filed in the office of the . .. town clerk.” In this case, the Planning Board’s decision to grant the Special Permit to Walker was filed with the Town Clerk on April 2, 2003. On April 23, 2003, the Town Clerk certified that no appeal had been filed within the twenty-day period after the filing date. On the same day, Howard filed his appeal.
On the face of the Special Permit decision, there was an erroneous notation made by a Planning Board member, indicating that the date the decision was filed with the Town Clerk was April 3rd, as opposed to its actual filing date of April 2nd. Walker argues that this scrivener’s error is of no consequence. However, Howard contends that Walker should be estopped from contending that the appeal was not timely filed because Howard relied on the plain language of the decision and the misleading time stamp when calculating the proper appeals period.
Compliance with the twenty-day requirement is a jurisdictional requisite, which is “policed in the strongest way” and “given strict enforcement.” Konover Mgmt. Corp. v. Planning Bd. of Auburn, 32 Mass.App.Ct. 319, 323 (1992). For example, in Bingham v. Fitchburg, 52 Mass.App.Ct. 566, 568 (2001), the court held that an appeal filed 15 minutes after the Clerk’s office closed was untimely. As the Bingham court noted, “the twenty-first day is not the twentieth day.” Id. at 571. As such “if the required notice was not received within tweniy days, the appeal should be dismissed.” Garfield v. Bd. of Appeals of Rockport, 356 Mass. 37, 39 (1969).
The only circumstance where dismissal is not required is where the Clerk received some sort of actual notice or had actual knowledge, within the mandatory twenty-day period, that a complaint had been timely filed. Konover, 32 Mass.App.Ct. at 325. As the Konover court noted, “(t)he key element of the decisions relaxing the rigors of strict compliance with the zoning appeal statute is that within the mandatory twenty-day period the clerk is actually notified that an appeal — i.e., a complaint — has in fact been timely filed.” Id. at 324. Here, in an affidavit, the Clerk certified that she had no notice or knowledge of any appeal being filed within the twenty-day period.
Timely institution of an appeal is held as a sine qua non. See Bingham, 52 Mass.App.Ct. at 568. In this situation, Howard filed his appeal on the twenty-first day. The Clerk had no notice of the appeal within the twenty-day appeal period. Unfortunately for Howard, failures in meeting the twenty-day deadline are not forgiven. See Costello v. Bd. of Appeals of Lexington, 3 Mass.App.Ct. 441, 442-43 (1975). Therefore, even though Howard mistakenly relied on the April 3rd date referenced on the Special Permit, his appeal must be dismissed. However, assuming, arguendo, that Howard had filed his appeal within the twenty-day period, the court will address the third and final issue presented by the Planning Board’s grant of the Special Permit.
The last issue is whether the Planning Board properly granted the Special Permit to Walker. Walker argues that the Planning Board properly granted the Special Permit because the lot meets all of the requirements set forth in §2.3.4.2.a of the Town’s Zoning By-Law. In order for two principal residential structures to be erected on the same lot, “the minimum lot area, width, and frontage shall be the sum of the requirements for each principal residential structure . . .” Walker and Howard agree that the lot area and frontage meet the GCII and R40 zoning district requirements. However, they have a dispute as to the width. The width required in both of the zoning districts is 100 feet, making the width required for the Special Permit 200 feet.
This disagreement as to the width of Walker’s property is of consequence because if the width is 271.59 as Walker argues, then the property has the requisite width for the construction of two dwelling units because the width is greater than the 200 feet required under the By-Law. If on the other hand, Howard is correct and the width is 153.6 feet, the lot does not *580 have the requisite width for the construction of two dwelling units, and the Planning Board’s grant of the Special Permit would be improper.
At trial, the Town Planner testified that the Walker lot is a “panhandle lot” and therefore, the width is measured at the widest point of the lot. A panhandle lot is defined as “a lot with the required lot frontage which has reduced access to the main portion of the lots.” Town of Dennis Zoning By-Laws, §5. The Walker lot is clearly a panhandle lot as the width at the top portion of the lot is 153 feet and then balloons out to over 271 feet. Howard argues that there is no support in the By-Law for measuring the width at the rear lot line. Howard contends that the width should be measured by the definition of “lot width” provided by the By-Law. “Lot width” is defined as “the horizontal distance between lot lines measured parallel to the street line at the back of the required front yard.” Town of Dennis Zoning By-Laws, §5. According to this definition, the width of Walker’s lot would only be 153 feet wide.
When there is a dispute as to the scope or application of a zoning bylaw, the court must determine the meaning of the bylaw, pursuant to G.L.c. 40A, §17. Falardeau v. Woupio, Civil No. 01272 (Worcester Super.Ct., Jan. 29, 2004) (Agnes, J.). While this is a question of law for the court, deference must be given to the interpretation reached by the local board, here the Planning Board, which enjoys the advantage of greater knowledge of local conditions and the history and purpose of zoning laws in their community. Id.; see Manning v. Boston Redev. Auth., 400 Mass. 444, 452-53 (1987). When the words have a plain and ordinary meaning, they should receive the same meaning from a court unless there is a strong reason to believe that another and different meaning was intended. See Iodice v. Newton, 397 Mass. 329, 332-33 (1986).
The parties in this case, relying on seemingly incompatible terms contained in the definition section of the By-Law, disagree as to the width of the Walker lot and the point from which the width should be measured. Howard suggests that the definition of “lot width” is inconsistent with Walker’s characterization of the lot as a “panhandle lot.” Walker argues that although the By-Law does not define “panhandle lot width,” it would not make sense to apply the definition of lot width to a panhandle lot. Walker contends that it would be absurd to say that the width of the lot is the width at its narrowest point, when the plan clearly shows that the majority of the lot has a width of over 271 feet.
A basic tenet of statutory construction requires that a statute “be construed ‘so that effect is given to all its provisions, so that no part will be inoperative or superfluous.’ ” Bankers Life & Cas. Co. v. Comm’r of Ins., 427 Mass. 136, 140 (1998). Where, as here, a by-law contains seemingly conflicting language, a court must “interpret... [it], if possible, so ‘as to make it an effectual piece of legislation in harmony with common sense and sound reason,’ ” Mass. Comm’n Against Discrimination v. Liberty Mut. Ins. Co., 371 Mass. 186, 190 (1976), quoting Atlas Distrib. Co. v. Alcoholic Beverages Control Comm’n, 354 Mass. 408, 414 (1968), and “tak[ing[ care to . . . carry out the legislative intent.” Mass. Comm’n Against Discrimination v. Liberty Mut. Ins. Co., supra, and cases cited. The statute must be viewed “as a whole”; it is “not proper to confine interpretation to the one section to be construed.” Nor may a court “accept the literal meaning of the words of a statute without regard for that statute’s purpose and history.” Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). On the contrary, if a court concludes that “the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act.” Saccone v. State Ethics Comm’n., 395 Mass. 326, 334 (1985), quoting Holbrook v. Holbrook, 1 Pick. 248, 250 (1823).
The Court must interpret the meaning of a zoning bylaw in the same manner as it would a statute. Falardeau v. Woupio, Civil No. 21272 (Worcester Super.Ct. December 4, 2003) (Agnes, J.) (17 Mass. L. Rptr. 72). Here, viewing the By-Law as a whole and considering both common sense and legislative intent, this court finds Walker’s argument persuasive and concludes that the term “lot width,” as defined in the By-Law, does not apply to a panhandle lot. The Walker lot is a panhandle lot and as such, the width should be measured at the widest point of the lot, which in this case is 271.59 feet. The width of 271.59 feet satisfies the width requirement of §2.3.4.2.a of the Town’s Zoning By-Law. Because the lot has the requisite width for the construction of two dwelling units, the Planning Board properly granted the Special Permit
ORDER
For the reasons stated above, it is ORDERED that judgment shall enter declaring that:
1. Howard is the owner of the fee in Richard Lane as it abuts his property, Lots 3 and 4, and that Walker is permanently enjoined from trespassing on Richard Lane as it abuts Howard’s property.
2. Walker has the right to use and improve the Ancient Way.
3. The Dennis Planning Board properly granted the Special Permit to Walker.

 The trust is the owner of property at 803 Main Street, West Dennis, which was shown as Lots 1 and 2 on the July *581 18, 2002 Plan of Land in West Dennis. Civil Action No. 03-260 (Exhibit 2).

 The McCrossins are the former owners of Lot 2 of the Walker property. In 2003, the McCrossins gave a deed to the property to the Walker Realty Trust.

 This comports with the January 2003 decision by Judge Kane, who, in his “Rulings, Findings, and Orders” on plaintiffs motion for injunctive relief, concluded that “according to the [Richard Land Subdivision Plan), Richard Lane overlaps at points part of the Ancient Way, and starting in the southerly section of proposed Lot 3, all of the Ancient Way.” Additional support for this interpretation is found in Taylor’s grant of an easement over Richard Lane to S&S Realty Trust in return for a grant from them in the Ancient Way (referred to in Exhibit 18 as “a traveled way” and “an overgrown wood road”). Given the location of the S&S (Whiting) parcel, across from Lots 1 and 2 of Taylor’s subdivision, it is clear that the Ancient Way does extend south of the 12’ wide right of way.

 See Judge Kane’s “Rulings, Findings, and Orders,” January 2003.