Ostrach, Stephen, J.

Statement of Facts

Both of the primary parties to this case have moved for summary judgment and neither alleges that there are any material facts in dispute. The following, ap *393 parently undisputed, factual discussion is taken from the evidentiary materials in the parties’ filings.
This case involves a Shaw’s Supermarket located at 166-207 Grafton Street in Worcester. The owner of the property, Grafton Partners, LLC, applied to the Worcester Planning Board for approval of a revised site plan to reconfigure its parking lot and to add eighteen parking spaces. The Planning Board approved that application with conditions. CDB Realty Trust, which owns abutting property at 38 Artie Street, (“CDB”) filed an administrative appeal of that decision with the Worcester Zoning Board of Appeals (“ZBA”). The ZBA scheduled a hearing on CDB’s appeal for August 16, 2004. As required by law, notice of the hearing was published in the Worcester Telegram & Gazette on July 30 and August 6, 2004. Before the hearing, Grafton Partners filed a written request to continue the hearing to September 13. That request was assented to by CDB and another abutter. Because he had not received word whether the continuance had been allowed despite several phone calls to the ZBA, CDB’s attorney went to the ZBA meeting on August 16. At that meeting he was approached by Ms. Kennedy-Valade, whom he identified as the ZBA’s “chief staff person." Apparently she was then the Coordinator of Land Use for the City of Worcester and the Clerk of the ZBA. According to that attorney’s affidavit, Ms. Kennedy-Valade told him “Oh [counsel], you don’t have to stay, this matter is being continued by the Board until its next meeting, on September 13, 2004.”[1]
But the meeting was not postponed. At some time in the evening of August 16, after CDB’s counsel left, the ZBA voted to deny the request to continue the hearing and went on to deny the appeal of the Planning Board decision. CDB’s attorney avers that he learned the next day (August 17) that the ZBA had denied the continuance and denied the appeal. On that date, he sent a letter of protest to the ZBA and, three days later, another abutter requested the ZBA to reconsider its actions and schedule a hearing at which all parties could be heard. Apparently troubled by the ZBA’s action, Ms. Kennedy-Valade requested legal advice from the City Solicitor’s office on how to proceed and a deputy in that office urged the ZBA to revoke its denial and reschedule a hearing on the appeal. Nonetheless, at the ZBA’s next meeting, on September 13, 2004, it denied the requests to reconsider its actions of August 16. On September 28, 2004, the ZBA decision of August 16, 2004, which denied CDB’s appeal, was placed on file at the office of the Worcester City Clerk. CDB filed this action with the Clerk of Courts for Worcester County on October 15, 2004. Finally, it is undisputed that that the Worcester City Clerk’s office first received notice of this action (in the form of a copy of the complaint) on October 22, 2004, twenty-four days after September 28.

Legal Analysis

The dispositive issue before the Court is the timeliness of CDB’s appeal here. G.L.c. 40A, §17, para. 1 provides in relevant part:
Any person aggrieved by a decision of the [ZBA] . . . may appeal... by bringing an action within twenty days after said decision has been filed in the office of the city or town clerk... Notice of the action with a copy of the complaint shall be given to such city or town clerk so as to be received within such twenty days.
Paragraph 2 of that section provides, again in relevant part:
The foregoing remedy shall be exclusive, notwithstanding any defect of procedure or notice other than notice by publication, mailing or posting as required by this chapter, and the validity of any action shall not be questioned for matters relating to defects in procedure or of notice in any other proceedings except with respect to such publication, mailing or posting and then only by a proceeding commenced with ninety days after the decision has been filed in the office of the city or town clerk,
As noted above, the ZBA decision, though made August 16 and reaffirmed on September 13 was not “placed on file with the [Worcester City Clerk]” until September 28. This action was filed on October 15, 2004, within 20 days of September 28. However the Worcester City Clerk did not receive notice of the action until October 22,24 days after the decision was placed on file.
The ZBA correctly notes that the Appeals Court has held that the “receipt of notice by the town clerk is a jurisdictional requisite" for a complaint under section 17 “which the courts have policed in the strongest way and given strict enforcement.” Konover Mgt. Corp. v. Planning Board of Auburn, 32 Mass.App.Ct. 319, 322-23 (1992) (citations and ellipses omitted); see also O'Blenes v. Zoning Board of Appeals of Lynn, 397 Mass. 555, 557-58 (1986) (affirming dismissal of appeal where notice given to city clerk twenty-one days after the filing); Massachusetts Bread Co. v. Brice, 13 Mass.App.Ct. 1053, 1054 (1982) (time limits in section 17 enforced “with strictness”). While there is flexibility in how that notice may be provided, there has been no “relaxing the rigors of strict compliance” with respect to the requirement of timely notice to the clerk. Konover, supra at 324.
Accordingly the dispositive question in this case is whether CDB’s challenge falls under the rubric of “such publication, mailing or posting” for which a ninety days appeal period is allowed. The Supreme Judicial Court has held that the “plain meaning” of the ninety-day appeal period is that it is limited to “actions alleging the invalidity of any action by the board due to certain defects in procedure or notice for public *394 hearings required by the first paragraph of [G.L.c. 40A, §11).” Cappuccio v. Zoning Board of Appeals of Spencer, 398 Mass. 304, 309, 311 (1986). CDB attempts to fit itself into that mold by arguing that Ms. Kennedy-Valade’s incorrect assurance that the matter had been continued vitiated the earlier notices which were properly published pursuant to section 11.
It seems helpful to begin the analysis of section 17 with Kramer v. Zoning Board of Appeals of Somerville, 65 Mass.App.Ct. 186 (2005), the most recent appellate discussion of that section. At first blush, Kramer supports CDB’s broad reading of the ninety-day proviso. Kramer refers to that period as dealing with situations “where there has been a defect in notice.” Id., at 193; see also id., at 191 (“A longer period (or ninety days) applies, however, to appeals based on defects in procedure, including notice”). Some language in Kramer suggests that in all cases of defective notice a party is entitled to ninety days to seek review. See id., at 193 (in dicta, noting a party “provided with less than perfect notice of a hearing would have access to judicial review, at least within ninety days ...”); id., at 194 (noting that in other cases “the aggrieved party eventually received some sort of notice that either permitted him to appear at the hearing or to appeal within the ninety-day window”).
Kramer can be distinguished, however, because the plaintiff there apparently received no notice whatsoever about the pending proceeding (id., at 195). More importantly, when Kramer awoke to find an obstruction outside his window, he sued the ZBA within 16 days. Id. at 188. The core holding of Kramer is that “where there has been a complete failure of notice of a public hearing . . . the ninety-day limitation in G.L.c. 40A, §17, should not be deemed to run until the abutter has notice of the project to which he objects.” Id. at 193-94 (emphasis added).[2]
There is no reason to minimize or defend the Board’s actions, at least as they appear on the record now before the Court. An officer of the ZBA specifically assured counsel for a statutorily interested person that he need not remain to exercise his client’s constitutional rights. Once that person did leave, the Board proceeded to act adversely to his client’s interest without giving him any opportunity to express his client’s position. Even after the Board learned what had happened and received legal advice that it should reopen the matter to give CDB a chance to present its view, it refused to allow CDB any opportunity to present its objection to the Planning Board decision.
If true, this was egregious and, following a properly brought appeal, would likely warrant setting aside the Board’s decision and remanding the matter for further proceedings where CDB and other abutters would have a fair chance to speak.[3] But such an error by the Board would not be a “complete failure ofnotice.”[4]
Tenneco Oil Co. v. City Council of Springfield, 406 Mass. 658 (1990), is helpful on this point. In Tenneco the zoning authority, after a properly noticed hearing, voted to grant a special permit. Subsequently, without any additional notice, the council met with opponents of the permitee and, at a formal meeting, voted to rescind its earlier approval. The permitee sued. The Court held:
[t]he clear purpose of the hearing and notice requirements of [section 11] is to ensure that zoning authorities act on special permit applications only after the opposing interests have had a fair opportunity to be heard. A zoning authority ought not to be allowed to take one position at a hearing conducted after due notice, and then reverse itself at a subsequent meeting in the absence of one or more of the interested parties. To rule otherwise would encourage the kind of informal lobbying that apparently occurred here and would frustrate the policy of fairness and openness behind [section 11].
Id., at 660.
While the language of Tenneco certainly supports plaintiffs position on the substantive merits of its case, the logic of the decision does not. The key point that distinguishes Tenneco from this case is that in Tenneco the authority had made a final decision before the failure of notice. Thus the failure to provide notice of the reconsideration proceeding left the permitee totally in the dark. Here, in contrast, CDB knew at all times that there was an active proceeding ongoing before the Board. It argues, with considerable force, that its legitimate rights to participate in that proceeding were violated, but, unlike Mr. Kramer and Tenneco, it knew there was a pending proceeding.Essentially CDB is in the position of a party who appeared at a hearing but was improperly denied its right to present evidence, which is effectively what occurred at the September 13 proceeding when the ZBA declined to reconsider its August 16 action.
Kramer does teach that the section 17 review period would not begin until CDB learned the ZBA, contrary to Ms. Kennedy-Valade’s assurance, had ruled on its appeal. Whether twenty or ninety days, CDB’s clock did not begin until it learned on August 14 that its appeal had been denied. From that moment CDB knew of the injury the ZBA had done to its protected interest. That injury did not ripen into a matter suitable for judicial review until September 28, when the August 13 ZBA decision was placed on file in the city clerk’s office. At that point a hypothetical “party in interest,” such as an abutter who had not received any notice pursuant to section 11 (like Mr. Kramer), would have ninety days to seek review of the ZBA action. This longer period presum *395 ably reflects the concern that a person who was “complete [ly]” without notice was entitled to additional time to find out his injury, decide how to proceed and get to court. But CDB was not in the position of such a hypothetical party. It knew about the ZBA proceeding, it knew when it was injured and it had ample time to protect its rights. If the twenty-day provision is applicable, CDB had until October 18 to file an appeal with this court, which it did on October 15. Its error, as noted above, was its failure to file notice of that appeal with the city clerk until October 22, seven days later, sixty-nine days after it learned of the results of the August 13 ZBA hearing. Requiring it to perfect its appeal within twenty days, like any other disappointed party except total strangers like Mr. Kramer, is not inconsistent with the policy of fairness and openness behind section 11 recognized in Tenneco.
Since the ZBA’s alleged error here is thus not a violation of section 11 notice requirements, CDB’s position essentially becomes the argument that any error of notice by the ZBA should trigger the ninety-day review period. That contradicts the language of paragraph 2 quoted above that the twenty-day period “. . . shall be exclusive, notwithstanding any defect of procedure or notice [other than notice by publication under §11].” A similar argument was rejected in Cappuccio v. Zoning Board of Appeals of Spencer, 398 Mass. 304 (1986), where the Court held that failure to mail the statutorily required notice of a decision did not trigger the ninety-day provision. Rather, as quoted above, it held that provision deals only with defects in complying with the procedures for providing notice of public hearings set forth by section 11. That those procedures were correctly followed is not disputed. As discussed above, Ms. Kennedy-Valade’s subsequent error, or the Board’s error in not addressing her mistake, while falling within the general ambit of “failures of notice,” cannot be retroactively characterized as failures to comply with section 11.
To accept CDB’s position would be to give greater protection to persons aggrieved by procedural ZBA errors than those aggrieved by substantive ones. That makes little sense. Cf. Kramer, supra at 193; Cappuccio, supra at 309 (section 17 should not be interpreted to produce absurd or nonsensical results). In adopting a very short twenty-day period for seeking review, the General Court obviously felt there is a strong policy reason for requiring persons aggrieved by zoning decisions to bring their concerns before the courts promptly and to put the public on equally prompt notice of the judicial challenge. See O’Blenes v. Zoning Board of Appeals of Lynn, 397 Mass. 555, 558 (1986) (noting that the public interest in assuring a timely record in the clerk’s office of court challenges to board decisions requires strict enforcement of section 17).
Enlarging that period to 90 days in the unusual circumstances where a board totally fails to meet its statutory obligation to notify the general public is a narrow legislative exception to that general policy, one too narrow into which to fit CDB’s objections to the ZBA’s actions here.

Conclusion

Because CDB asserts an error by the ZBA other than a failure to provide the notice required by G.L.c. 40A, §11, it was required to bring suit in the Superior Court and to provide notice of that suit to the city clerk within twenty days of when it learned of the error of which it complains or within twenty days of when the ZBA decision was placed on file in city clerk’s office, whichever came last. While it did file this action timely, it failed to provide the city clerk with timely notice. Accordingly, given the precedents which require strict enforcement of that requirement, I am compelled to allow the defendant ZBA’s motion for summary judgment.

 Counsel for the ZBA vigorously objects to the Court’s consideration of this alleged remark. Without in any way denying that Ms. Kennedy-Valade was the ZBA Clerk or that she did say what counsel avers, he contends that the remark is hearsay and outside the ambit of material the Court may consider for Rule 56 purposes. Since CDB’s sole argument is based on an alleged failure of notice, the ZBA’s objection to the consideration of the uncontroverted statement is merit-less. CDB seeks to use the statement not to prove the meeting was rescheduled (it was not), but rather to prove that Ms. Kennedy-Valade’s incorrect statement demonstrates that the Board had failed to provide it with notice of the true date of the meeting. “An extrajudicial statement is not hearsay when offered to prove that the person to whom it was addressed had notice or knowledge of the contents of the statement.” Commonwealth v. Bregoli, 431 Mass. 265, 273 (2000) (quotation omitted).

 See Kramer, supra at 195 (“The reasoning and spirit of the case law buttress our conclusion that where no notice has been provided under G.L.c. 40A, §17, the ninety-day statute of limitations does not begin to run until the aggrieved party becomes aware of the project to which he objects (emphasis added”)).

 In Kramer (at 193) the Court noted that it “can attribute to the Legislature the expectation that municipal officials would in fact discharge their obligations under G.L.c. 40A, §11, regarding notice, that is, in a way that is consistent with presumptions of regularity and good faith.” In light of the record before the Court at this time, that expectation may not have been warranted in the specific circumstances of this case.

 See Kramer, supra at 195, n.8 (The complete absence of notice of the hearing or the decision distinguishes Kramer’s situation from that in Cappuccio v. Zoning Board of Appeals of Spencer, 398 Mass. 304, 306 (1986)).